# JOHN SWENSON GRANITE, INC.

### v.

# STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued Oct. 8, 1996.

Decided Nov. 19, 1996.

Andrew M. Horton (orally), Seth W. Brewster, Verrill & Dana, Portland, for Appellant.

Thomas A. Knowlton (orally), Assistant Attorney General, Augusta, for Appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

CLIFFORD, Justice.

John Swenson Granite, Inc. (Swenson) appeals from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) affirming the State Tax Assessor's determination that Swenson was liable to pay a tax for granite shipped to Maine. Swenson contends that the assessment of sales or use taxes was improper, that the tax assessment violated the due process and commerce clauses of the United States Constitution, and that penalties imposed by the Assessor should have been abated or waived. Although we agree with Swenson that *some* of the transactions are not subject to a Maine *sales* tax, they nevertheless are subject to the complementary *use* tax. We are unpersuaded by the remainder of Swenson's contentions and affirm the judgment.

The parties stipulated to the facts. Swenson, a corporation with a principal place of business in Concord, New Hampshire, sells granite for various uses. In 1951, Swenson registered with the Bureau of Taxation as a

"retailer"[1] and has filed quarterly sales/use tax returns since 1975. Swenson was audited twice previously in the 1960s and 1970s.

This audit period for the contested assessment runs from April 1, 1984, through December 31, 1989. During that time, Swenson sold over $4 million in granite to Maine customers and locations for use in Maine. Swenson was paid after delivery in Maine for about 95% of the sales. Delivery occurred by Swenson's own trucks or by common carrier to the Maine destination required by the customer. Swenson averaged about 180 deliveries each year, and its trucks made about 89% of all deliveries. Delivery was a provision in all of the sales agreements in which Swenson used its own trucks and some of those in which common carriers were used. The vice president of Swenson visited customers in Maine two to five times a year to both solicit sales and deal with any existing concerns of the present customers. In addition, a Swenson employee who is a Maine resident gave technical assistance to Maine companies four or five times during the audit period. Finally, Swenson advertised in telephone directory yellow pages that served several Maine towns. The State collected no sales or use tax during this period, and Swenson's quarterly returns during the audit period stated that it had made no taxable sales in Maine.

Swenson made each sale of material pursuant to a contractual provision providing in part that the

> [b]uyer agrees that unless trucking of any load is by Swenson, title and all risk of loss during shipment passes to Buyer. If shipment is by Swenson, Buyer agrees that the risk of loss passes to Buyer at the time Swenson's truck arrives at the nearest accessible location to the job site.

On May 23, 1990, the Assessor assessed sales tax, interest, and penalties against Swenson. After the Assessor granted in part a petition for reconsideration, Swenson filed an appeal in the Superior Court pursuant to 36 M.R.S.A. § 151 (1990 & Supp.1995) and M.R.Civ.P. 80C. The court upheld the tax assessment, interest, and penalties that

the State assessed. The court concluded that when Swenson used its own trucks, the contract provided that "title to the granite and risk of loss did not pass to the Maine customer until delivery in Maine" and resulted in a sale in Maine. For common carrier sales, the court found that the terms and conditions were ambiguous and, therefore, title passed at the destination. The court concluded that, alternatively, the common carrier sales were subject to a use tax. This appeal followed.

We review the Superior Court's decision directly. *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 532 (Me.1996). Pursuant to 36 M.R.S.A. § 1811 (1990 & Supp.1995), a sales tax is imposed on the "value of all tangible personal property and taxable services sold at retail in this State." Swenson contends that the trial court erred in upholding the assessment because none of its alleged sales occurred in Maine. The contractual language at issue provided that "title and all risk of loss during shipment passes to [b]uyer" unless Swenson trucks the load. It also provided that if Swenson ships the goods, buyer "agrees that the risk of loss passes to [b]uyer at the time Swenson's truck arrives at the nearest accessible location to the job site." Swenson contends that these provisions mean that title always passed outside Maine because materials always were shipped from outside Maine.

We agree with Swenson that, when Swenson used a common carrier to ship the granite, the language of the contract providing that "title and risk of loss during shipment passes to [b]uyer" means that title passed to and the risk of loss was assumed by the buyer at the time of shipment to Maine. Because the shipment always commenced in New Hampshire, no Maine sales resulted. The language is unambiguous, and thus, the court must interpret it "according to its plain and commonly accepted meaning[.]" *Brackett v. Middlesex Ins. Co.*, 486 A.2d 1188, 1190 (Me.1985). The provisions of the Uniform Commercial Code are consistent with this result. Section 2–401(1) states that "title to goods passes from the seller to the buyer in any manner and on any conditions

---

1. See 36 M.R.S.A. § 1752(10) (1990).

explicitly agreed on by the parties." 11 M.R.S.A. § 2–401(1) (1995). Section 2–401(2) notes that "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ..." 11 M.R.S.A. § 2–401(2). In addition, that section provides

(a) If the contract requires or authorizes the seller to send the goods to the buyer *but does not require him* to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(b) If the contract requires delivery at destination, title passes on tender there.

11 M.R.S.A. § 2–401(2)(a), (b) (emphasis added). Because the contract's provision required Swenson to deliver the granite only to the common carrier in New Hampshire, title passed at the time and place of shipment, i.e., New Hampshire.

■ When Swenson trucked the granite in its own trucks, however, and delivered it to Maine destinations, a Maine sale *did* occur. Nothing in the agreement explicitly altered the U.C.C.'s rule in section 2–401(2). Swenson contends that because the first sentence of the provision states that title passed during shipment, it applies equally when Swenson trucks are used because the second sentence does not alter it. We disagree. At most, the second sentence's silence regarding the time that title passes creates an ambiguity when the two sentences are considered in conjunction. Because the contractual provision as a whole is ambiguous, it must be construed against its author. *T–M Oil Co., Inc. v. Pasquale,* 388 A.2d 82, 86 (Me.1978). Thus, when Swenson used its own trucks to ship granite to Maine, and delivery by its own trucks was to Maine locations, title did not pass until that Maine delivery and therefore resulted in Maine sales.

■ Even though the Superior Court's conclusion that the sales when common carriers are used were Maine sales was error, nevertheless, the court correctly decided that the transactions are subject to a use tax. Swenson contends that the Assessor's failure to originally assess the use tax demands that the use tax issue not be considered by this Court and that the case be remanded. We disagree. Although the Assessor did not separately pursue a use tax, Swenson conceded at oral argument that a use tax could have been levied on any of the sales that were not subject to the Maine sales tax. 36 M.R.S.A. § 1861 (1990 & Supp.1995), the use tax statute, states that

[a] tax is imposed, at the respective rate provided in section 1811, on the storage, use or other consumption in this state of tangible personal property or a service the sale of which would be subject to tax under section 1764 or 1811 .... Retailers registered under section 1754 or 1756 shall collect the tax and make remittance to the State Tax Assessor. The amount of the tax payable by the purchaser is that provided in the case of sales taxes by section 1812.

*See also American Tel. & Tel. Co. v. State Tax Assessor,* 652 A.2d 107, 109 (Me.1995).

There is no question that customers used the granite in Maine. In the interests of not exalting form over substance, and in recognition that "[t]he use tax is a necessary compliment to the sales tax," *Katz v. State Tax Assessor,* 472 A.2d 428, 429–30 (Me.1984), we conclude that a use tax applies to the common carrier sales, even though the sales tax did not. *See, e.g., Rowe–Genereux, Inc. v. Vermont Dep't of Taxes,* 138 Vt. 130, 411 A.2d 1345, 1347 (1980) (sales tax upheld on appeal as use tax).

■ Swenson contends alternatively that the assessment violated the due process and commerce clauses of the United States Constitution. The due process clause requires a "definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Quill Corp. v. North Dakota,* 504 U.S. 298, 306, 112 S.Ct. 1904, 1909, 119 L.Ed.2d 91 (1992) (quoting *Miller Bros. Co. v. Maryland,* 347 U.S. 340, 344–45, 74 S.Ct. 535, 538–39, 98 L.Ed. 744 (1954)); U.S. Const. amend. XIV. In addition, the commerce clause is satisfied when the tax " '(1) is applied to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the ser-

vices provided by the State.'" *Id.* at 311, 112 S.Ct. at 1912 (quoting *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977)); U.S. Const. amend. XIV; U.S. Const. art. I, § 8, cl. 3. Although the precise quantum of connections may differ to satisfy the two clauses,[2] the record reflects that the assessment violated neither clause in this case. Swenson's vice president and an employee residing in Maine were involved in customer concerns and new business with existing customers in this state. Swenson advertised in the telephone directory yellow pages in Maine. Moreover, about 180 deliveries were made in Swenson's trucks each year to Maine. Swenson was directing its activities towards this State, and taxing them was constitutionally fair.

■ Finally, Swenson argues that the penalties imposed by the Assessor should be waived or abated because it has supplied substantial authority justifying its failure to pay either a sales or use tax for the transactions in this case. Penalties were assessed in this case for failure to pay taxes when due and for filing materially incorrect tax returns due to negligence. 36 M.R.S.A. §§ 187(2), (3) (1990) *(repealed and replaced by* 36 M.R.S.A. § 187–B (Supp.1995)). The State Tax Assessor shall waive or abate the penalties in cases such as this if "reasonable cause" for the failure to pay is shown. This includes instances when "[t]he taxpayer has supplied substantial authority justifying the failure *to file or pay* ...."[3] 36 M.R.S.A. § 187–B(7)(F) (Supp.1995) (emphasis added).[4] The taxpayer has the burden of prov-

ing the grounds for waiver or abatement. 36 M.R.S.A. § 187–B(7).

The Superior Court properly upheld the penalties in this case. Swenson has already been the subject of two previous audits and was on notice that the State considered their sales taxable. That the transactions were Maine sales when Swenson used its own trucks to deliver granite in Maine is abundantly clear. For those transactions when a commercial carrier was used and there was no Maine sale and no *sales* tax due, the statute makes clear that the transaction was subject to a *use* tax, identical in amount to the sales tax, and that Swenson was obligated to collect and remit the tax. 36 M.R.S.A. § 1861.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** *See Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (overruling the requirement in *National Bellas Hess, Inc. v. Dep't of Rev. of Illinois,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), of "presence" for due process but not commerce clause considerations).

**3.** Although "substantial authority" is not defined in the Maine statutes, federal tax law defines the term as

> an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the "more likely than not"

standard ... but more stringent than the reasonable basis standard.... There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment.

26 C.F.R. §§ 1.6662–4(d)(2), (3) (1996).

**4.** This provision applies to "the assessment, accrual, waiver or abatement of penalties beginning on or after August 1, 1992, irrespective of the fact that the date as of which a penalty could have been assessed, accrued, waived or abated precedes August 1, 1992." P.L.1991, ch. 873, § 9. Thus, it applies to this case.