2011 ME 50

**VICTOR BRAVO AVIATION, LLC**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued Sept. 14, 2010.

Decided April 26, 2011.

Jonathan A. Block, Esq., Robert A. Creamer, Esq. (orally), Pierce Atwood LLP, Portland, ME, for Victor Bravo Aviation, LLC.

Janet T. Mills, Attorney General, Scott W. Boak, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for the State Tax Assessor.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, SILVER, and GORMAN, JJ.

Concurrence: LEVY, and MEAD, JJ.

SAUFLEY, C.J.

[¶ 1] In this case, we must decide whether an aircraft was exempt from Maine's use tax when it was purchased and delivered outside of Maine and was never registered in Maine but was present in the state on 156 days during its first twelve months of use. We considered a similar question in *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, 17 A.3d 667, in which the aircraft at issue was present in Maine significantly less frequently during the first twelve months of ownership than the aircraft in the matter before us. Based on the particular facts of the present case, the law in place when the aircraft was purchased, and the analysis set forth in *Blue Yonder*, we conclude that Victor Bravo Aviation, LLC's aircraft was appropriately subject to the use tax.

[¶2] Victor Bravo Aviation, LLC, appeals from a summary judgment entered on the Business and Consumer Docket (*Humphrey, C.J.*) affirming the State Tax Assessor's imposition of a use tax on an aircraft owned by Victor Bravo. Victor Bravo argues that a use tax should not have been imposed because the aircraft was not "located in this State," 36 M.R.S. § 1752(21) (2005), and because three use tax exemptions applied, 36 M.R.S. § 1760(23–C)(C), (45)(B), (82) (2005).[1] Victor Bravo also argues that the interest assessed against it should be waived or abated. *See* 36 M.R.S. § 186 (2005).

[¶3] The Assessor cross-appeals from the court's decision vacating the Assessor's

---

1. Section 1760 provided the three exemptions addressed by the parties here:

> Subject to the provisions of section 1760–C, no tax on sales, storage or use may be collected upon or in connection with:
>
> . . . .
>
> **23–C. Certain vehicles purchased or leased by nonresidents.** *Sales or leases of the following vehicles to a nonresident if the vehicle is intended to be driven or transported outside the State immediately upon delivery:*
>
> **A.** Motor vehicles, except automobiles rented for a period of less than one year, all-terrain vehicles and snowmobiles as defined in Title 12, section 13001;
> **B.** Semitrailers;
> **C.** *Aircraft;*
> **D.** Truck bodies and trailers manufactured in the State; and
> **E.** Camper trailers, including truck campers.
>
> If the vehicles are registered for use in the State within 12 months of the date of purchase, the person seeking registration is liable for use tax on the basis of the original purchase price.
>
> Notwithstanding section 1752–A, for purposes of this subsection, the term "nonresident" may include an individual, an association, a society, a club, a general partnership, a limited partnership, a domestic or foreign limited liability company, a trust, an estate, a domestic or foreign corporation and any other legal entity.
>
> . . . .
>
> **45. Certain property purchased outside State.** *Sales of property purchased and used by the present owner outside the State:*
>
> **A.** If the property is an automobile, as defined in Title 29–A, section 101, subsection 7, and if the owner was, at the time of purchase, a resident of the other state and either employed or registered to vote there;
>
> **A–1.** If the property is a watercraft that is registered outside the State by an owner who at the time of purchase was a resident of another state and the watercraft is present in the State not more than 30 days during the 12 months following its purchase for a purpose other than temporary storage;
> **A–2.** If the property is a snowmobile or all-terrain vehicle as defined in Title 12, section 13001 and the purchaser is not a resident of the State; or
> **B.** *For more than 12 months in all other cases.*
>
> Property, other than automobiles, watercraft, snowmobiles and all-terrain vehicles, that is required to be registered for use in this State does not qualify for this exemption unless it was registered by its present owner outside this State more than 12 months prior to its registration in this State. If property required to be registered for use in this State was not required to be registered for use outside this State, the owner must be able to document actual use of the property outside this State for more than 12 months prior to its registration in this State. For purposes of this subsection, "use" does not include storage but means actual use of the property for a purpose consistent with its design.
>
> . . . .
>
> **82. Sales of property delivered outside this State.** *Sales of tangible personal property when the seller delivers the property to a location outside this State* or to the United States Postal Service, a common carrier or a contract carrier hired by the seller for delivery to a location outside this State, regardless of whether the property is purchased F.O.B. shipping point or other point in this State and regardless of whether passage of title occurs in this State.
>
> 36 M.R.S. § 1760 (2005) (emphasis added).

denial of Victor Bravo's request for abatement of penalties. *See* 36 M.R.S. § 187–B(7) (2005). We affirm the summary judgment except with regard to interest.

## I. BACKGROUND

[¶ 4] The parties do not dispute that Victor Bravo is a limited liability company organized in Connecticut in 2002. Between November 20, 2002, and January 5, 2005, Victor Bravo had two members, E. Brian Cleary and his wife, Vicki Cleary. On January 5, 2005, the structure of ownership changed, and the sole member of Victor Bravo was Cleary Benefits Group, Inc., the Clearys' primary business. The Clearys also formed an LLC in Maine called Saddle Ridge Holdings, LLC, in May 2004 and were its sole members through April 2008. During 2005 and 2006, E. Brian Cleary was also the half-owner of Danbury Powersports, Inc., a Connecticut corporation.

[¶ 5] In December 2004, Victor Bravo contracted to purchase an aircraft from Columbia Aircraft Sales in Connecticut. The aircraft was constructed in France and flown to the United States in May 2005 with stops in Maine along its way to Connecticut, where Victor Bravo took possession of the aircraft. The aircraft was used both in Maine and in other states, including Connecticut, during the first twelve months that Victor Bravo owned it. According to a stipulation of the parties, the aircraft made thirty-seven trips to Maine, was present in the state on 156 days during that time period, and was in Maine overnight on at least 121 occasions. The aircraft was in Maine for the entire day on eighty-nine days during the first twelve months that Victor Bravo owned it.

[¶ 6] Victor Bravo never registered the aircraft in Maine. On occasion, however, the aircraft was placed in a hangar in Maine that Victor Bravo owned for storage of another aircraft that it owned. Victor Bravo had paid a use tax for the other aircraft in Maine, but it did not pay sales or use tax in any jurisdiction on the aircraft at issue here.

[¶ 7] Although the parties agree on these basic facts, they dispute whether making the above-listed trips constituted "use" in Maine by Victor Bravo or whether the trips instead constituted "use" by Saddle Ridge, Cleary Benefits, or Danbury Powersports, which rented the aircraft from Victor Bravo to make those trips. Saddle Ridge, Cleary Benefits, and Danbury Powersports entered into written rental agreements with Victor Bravo and compensated Victor Bravo when they leased the aircraft.

[¶ 8] On or about February 2, 2007, Victor Bravo was assessed with Maine use tax on the aircraft of $120,850, plus interest of $20,397.12 and penalties and costs of $36,255. Maine Revenue Services asserted that Victor Bravo owed $177,502.12. Upon reconsideration, the Assessor upheld the assessment of the tax. Victor Bravo appealed and sought a de novo determination from the Superior Court. *See* 36 M.R.S. § 151 (2010); M.R. Civ. P. 80C. Upon cross-motions for summary judgment, *see* M.R. Civ. P. 56, the court entered a summary judgment for the Assessor on the assessment of the tax and interest but for Victor Bravo on the issue of penalty waiver or abatement.

## II. DISCUSSION

[¶ 9] As we observed in *Blue Yonder, LLC,* 2011 ME 49, ¶ 8, 17 A.3d at 670–71, the use tax is designed "to minimize unfair competition between intrastate and interstate sales of tangible personal property," *Brent Leasing Co. v. State Tax Assessor,* 2001 ME 90, ¶ 11, 773 A.2d 457, 460 (quotation marks omitted). It is a tax imposed on personal property that is purchased outside of Maine and brought into Maine for use. *See Brent Leasing Co.,*

2001 ME 90, ¶ 11, 773 A.2d at 460. The use tax diminishes the incentive to purchase goods in out-of-state locations where there are lower, or no, sales taxes. *Id.* at 460–61. The use tax serves as a necessary complement to the sales tax. *John Swenson Granite, Inc. v. State Tax Assessor,* 685 A.2d 425, 428 (Me.1996).

[¶ 10] We review the decision of the court in this matter because the court was required by statute to determine questions of law and fact raised in an appeal from the Assessor's decision de novo. *See* 36 M.R.S. § 151; *see Blue Yonder, LLC,* 2011 ME 49, ¶ 6, 17 A.3d at 670. In light of the procedural posture of this tax appeal, which was decided on summary judgment, we review the grant of summary judgment de novo, viewing the facts in the light most favorable to the nonprevailing party to determine whether the court correctly concluded that there were no genuine issues of material fact and that the prevailing party was entitled to judgment as a matter of law. *See* M.R. Civ. P. 56(c); *Blue Yonder, LLC,* 2011 ME 49, ¶ 7, 17 A.3d at 670; *Stewart Title Guar. Co. v. State Tax Assessor,* 2009 ME 8, ¶ 11, 963 A.2d 169, 173.

[¶ 11] Guided by the principles established in *Blue Yonder, LLC,* 2011 ME 49, 17 A.3d 667, we first determine whether the aircraft was "used" in Maine by Victor Bravo, rather than the renters of the aircraft, such that the imposition of the use tax would be consistent with the purpose of that tax to complement the sales tax. We next examine the applicability of the exemptions that Victor Bravo claims in connection with exemptions for in-state sales of property delivered or immediately transported outside of Maine. *See* 36 M.R.S. § 1760(23–C), (82). We then address the applicability of the asserted exemption that applies to certain property purchased outside of Maine. *See id.* § 1760(45)(B). Finally, we review the determinations regarding interest and penalties.

### A. Use of the Aircraft in Maine

[¶ 12] Before addressing any of the asserted exemptions, we must determine whether Victor Bravo was *using* the aircraft during that twelve-month period. By statute, the term "use" was defined as follows:

> "Use" includes the exercise in this State of any right or power over tangible personal property incident to its ownership, *including the derivation of income, whether received in money or in the form of other benefits, by a lessor from the rental of tangible personal property located in this State.*

36 M.R.S. § 1752(21) (emphasis added). The statute plainly included the lease of property for consideration as a form of use by the lessor, Victor Bravo. The remaining question is whether the aircraft was "located in this State."

[¶ 13] We have interpreted the phrase "located in this State" to mean "coming to rest in the State after importation and … becoming part of the common mass of property within the State." *Realco Servs., Inc. v. Halperin,* 355 A.2d 743, 747 (Me. 1976) (emphasis omitted) (citing *Hunnewell Trucking, Inc. v. Johnson,* 157 Me. 338, 172 A.2d 732 (1961) and *Commercial Leasing Inc. v. Johnson,* 160 Me. 32, 197 A.2d 323 (1964)). Conducting a plain-meaning analysis, we held that "the Legislature intended the words 'located in this State' to relate to personal property which, in fact, had come to rest within the State with a corresponding loss of all transient characteristics." *Id.* Applying this interpretation, we held that trailers that had a mere "temporary presence" in Maine for the "purely transient purpose of reshipment to destinations outside the State" were not located in Maine and were not, therefore, subject to Maine's use tax. *Id.*

[¶ 14]  The present case is distinguishable from the facts of *Realco,* however, because the aircraft at issue here was not merely a conveyance used for shipping across state lines.  Rather, the aircraft was destined for Maine on thirty-seven trips and was present in Maine during at least 156 days in the first year of Victor Bravo's ownership.  In these circumstances, the aircraft was properly considered to have "come to rest" in Maine in a way that went beyond a temporary, transient presence.  Accordingly, the statute is properly interpreted to permit the assessment of a use tax on the aircraft, unless an exemption applies.

## B.  Exemptions from Sales Tax for Certain Purchases in Maine

[¶ 15]  Subsection (23–C) exempted from use taxation any sale or lease of an aircraft to a nonresident if the aircraft was "intended to be driven or transported outside the State immediately upon delivery." 36 M.R.S. § 1760(23–C).  If the aircraft was "registered for use in the State within 12 months of the date of purchase," however, "the person seeking registration [would be] liable for use tax on the basis of the original purchase price."  *Id.*

■ [¶ 16]  For the reasons set forth in *Blue Yonder, LLC,* 2011 ME 49, ¶ 14, 17 A.3d at 671, we interpret subsection (23–C)[2] based on its plain language to have applied to an aircraft that was purchased *in Maine* by a nonresident and "intended to be driven or transported outside the State immediately upon delivery." We also follow our reasoning in *Blue Yonder* in holding that section 1760(82) exempted from taxation an aircraft purchased in

Maine "when the seller deliver[ed] the property to a location outside this State." 36 M.R.S. § 1760(82); *see Blue Yonder, LLC,* 2011 ME 49, ¶ 15, 17 A.3d at 672. Accordingly, as the Superior Court properly concluded, these tax exemptions did not apply to the potential taxation of the aircraft at issue here, which was not purchased in Maine.

## C.  Exemption for Certain Property Purchased Outside of Maine

■ [¶ 17]  At the relevant time, as it pertains to this case, the following statutory exemption applied to certain property purchased outside of Maine:

Subject to the provisions of section 1760–C, no tax on sales, storage or use may be collected upon or in connection with:

. . . .

**45. Certain property purchased outside State.**  Sales of property purchased and used by the present owner outside the State:

. . . .

**B.**  For more than 12 months . . . .
Property, other than automobiles, watercraft, snowmobiles and all-terrain vehicles, that is required to be registered for use in this State does not qualify for this exemption unless it was registered by its present owner outside this State more than 12 months prior to its registration in this State.  If property required to be registered for use in this State was not required to be registered for use outside this State, the owner must be able to document actual use of the property outside this State for more than 12 months prior to its registration in this State.[3]

*Assessor,* 2011 ME 49, ¶ 2 n. 1, 17 A.3d 667, 669.

**2.**  The version of 36 M.R.S. § 1760(23–C) in effect when Victor Bravo purchased the aircraft was substantially the same as the 2002 version of subsection (23–C) construed in *Blue Yonder.  See* 36 M.R.S.A. § 1760(23–C) (Supp.2002); *Blue Yonder, LLC v. State Tax*

**3.**  It is not clear from the summary judgment record whether the aircraft at issue was registered in any other state.

For purposes of this subsection, "use" does not include storage but means actual use of the property for a purpose consistent with its design.

36 M.R.S. § 1760 (2005).

[¶ 18]   We interpreted a prior version of subsection (45) to exempt from use taxation an aircraft that was used extensively outside of Maine for the first twelve months and was used in Maine only on approximately twenty-one days during that time. *Blue Yonder, LLC*, 2011 ME 49, ¶¶ 16–23, 17 A.3d at 672–73. Because the version of subsection (45) that was in effect at the time of Victor Bravo's purchase is substantially the same as the 2002 statute we interpreted in *Blue Yonder*, we apply the statute, as construed in *Blue Yonder*, to the unique facts of this case to determine whether the exemption applied.

[¶ 19]   Accordingly, we examine the extent of the aircraft's use inside and outside of Maine to determine whether Victor Bravo's use of the aircraft outside of Maine was sufficiently substantial for the exemption to apply. *See Blue Yonder, LLC*, 2011 ME 49, ¶ 22, 17 A.3d at 672. Although the statutes and regulations in effect established no bright line regarding what amount of out-of-state use would constitute substantial use, we nonetheless conclude that, on the facts of this case, the extent of the use outside the state was inadequate for the exemption to apply.

[¶ 20]   The aircraft made thirty-seven trips to Maine and was present in the state on 156 days during the first year after purchase. Thus, the aircraft was present in Maine during approximately forty-three percent of Victor Bravo's first year of ownership. The aircraft was in Maine overnight on 121 occasions, and it was in Maine for the entire day on eighty-nine days. The aircraft was sometimes placed in a hangar that was owned by Victor Bravo. The aircraft operated in various other states, including Connecticut, where Victor Bravo was organized, when it was not in Maine.

[¶ 21]   This aircraft was not used so substantially outside of Maine during the first twelve months after purchase as to negate the imposition of a use tax. *See* 36 M.R.S. § 1760(45)(B); *Blue Yonder, LLC*, 2011 ME 49, ¶ 22, 17 A.3d at 672. Unlike the circumstances in *Blue Yonder*, where the use of the aircraft in Maine was minimal and the aircraft was used outside the state for the vast majority of the first twelve months after purchase, Victor Bravo used this aircraft in Maine on a substantial, ongoing basis during the twelve months after purchase. Using the terms of the exemption, the aircraft was "used by the present owner outside the State" for about fifty-seven percent of the time during the first twelve months of ownership. 36 M.R.S. § 1760(45).

[¶ 22]   In these circumstances, applying a reasonable interpretation of the statute, we hold that the aircraft was not used so substantially outside of Maine during the first twelve months of ownership that it would be unjust to impose a use tax in Maine. *See id.* § 1760(45)(B); *Blue Yonder, LLC*, 2011 ME 49, ¶ 22, 17 A.3d at 672. Accordingly, the exemption did not apply and the aircraft was subject to the use tax.

D.   Penalties

■ [¶ 23]   The Assessor also challenges the court's decision to waive or abate Victor Bravo's penalty. The pertinent statute requires the waiver or abatement of a penalty imposed for failure to pay taxes when due if the taxpayer meets its burden of showing reasonable cause. *See* 36 M.R.S. § 187–B(7); *John Swenson Granite, Inc.*, 685 A.2d at 429. Reasonable cause exists for failing to pay taxes owed if, for instance, "[t]he failure to file or pay resulted directly from erroneous information provided by the Bureau of

Revenue Services," or if "[t]he taxpayer has supplied substantial authority justifying the failure to pay." 36 M.R.S. § 187–B(7)(A), (F).

[¶ 24] The court was directed by statute to determine de novo whether penalties must be waived, *see* 36 M.R.S. §§ 151, 187–B(7), and we review the court's decision, *see Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 16, 898 A.2d 408, 412. Because the court decided the case on summary judgment, we review de novo whether the court properly concluded that there was no genuine issue of material fact and that no penalty should be imposed as a matter of law. *See Stewart Title Guar. Co.*, 2009 ME 8, ¶ 11, 963 A.2d at 173; M.R. Civ. P. 56(c).

[¶ 25] In support of its claim for waiver or abatement, Victor Bravo offered evidence that the Assessor's own publications improperly indicated, "The same exemptions that apply to sales tax apply to use tax." Given the undisputed language of these publications and the statutory ambiguities identified in *Blue Yonder* and in the present case, we agree with the Superior Court that Victor Bravo provided "substantial authority" for its failure to pay the use tax, notwithstanding that it was ultimately in error. Because we agree with the Superior Court's conclusion, we affirm the Superior Court's abatement of penalties.

**E. Interest**

■ [¶ 26] "If the failure to pay a tax when required is explained to the satisfaction of the assessor, the assessor may abate or waive the payment of all or any part of that interest." 36 M.R.S. § 186.

Here, the Assessor declined to abate or waive the interest on Victor Bravo's aircraft, and the Superior Court affirmed the Assessor's exercise of discretion. By statute, however, the Superior Court was required to determine the merits of the case de novo rather than undertaking traditional appellate review of agency action. *See* 36 M.R.S. § 151; *Stewart Title Guar. Co.*, 2009 ME 8, ¶ 11, 963 A.2d at 173; *see also Enerquin Air, Inc. v. State Tax Assessor*, 670 A.2d 926, 928–29 (Me.1996) (stating that we do not accord any heightened deference to the Assessor when de novo review by the Superior Court has been undertaken). Because the Superior Court did not perform this function, we must remand the matter for the Superior Court to make its own determination whether interest should be waived or abated based on the undisputed facts presented on summary judgment. In all other aspects, we affirm the judgment of the Superior Court.

The entry is:

Judgment on interest vacated and remanded for further proceedings consistent with this opinion. In all other aspects, judgment affirmed.

LEVY, J., with whom MEAD, J., joins, concurring.

[¶ 27] For the reasons expressed in my separate opinion in *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, 17 A.3d 667, I do not join in the Court's opinion, but I concur in the result.