STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-09-23
TEH         UM - 7/18/2012

MILE HIGH AIR, LLC,

Petitioner,

v.

DECISION ON 80C APPEAL
(As Corrected)[1]

STATE TAX ASSESSOR,

Respondent

Petitioner Mile High Air, LLC (MHA) appeals from the reconsideration decision of Respondent State Tax Assessor assessing use tax and interest on MHA's use of a Cessna Skylane 182RG aircraft (the "Aircraft") in Maine. *See* 36 M.R.S. § 151 (2010)[2]; M.R. Civ. P. 80C. The issues presented in this appeal are: 1) whether MHA's use of the Aircraft qualifies for an exemption pursuant to 36 M.R.S.A. § 1760(45)(B) (Supp. 2002), (Count IV); and 2) whether MHA has established sufficient grounds for the waiver of interest pursuant to 36 M.R.S.A. § 186 (Supp. 2002), (Count VI).[3]

## STIPULATED FACTS

In lieu of a de novo hearing, the parties stipulated to the following facts regarding the use of the Aircraft during MHA's first year of ownership. MHA was formed as a Vermont limited liability corporation in order to purchase, own, lease, and operate the Aircraft. (Stip. ¶ 11.) During the relevant assessment period, MHA's sole member was Gardeners Intervale Partnership

---

[1] The court hereby corrects a scrivener's error in the last paragraph of subsection C (*Substantial Use Test: Application*), line 3, on page 15 of the original draft of the Decision by replacing the phrase "qualitative analysis" with "quantitative analysis".

[2] Title 36 M.R.S. § 151 has been subsequently and substantively amended. *See* P.L. 2011, ch. 694, § 3 (effective May 25, 2012) (repealing and replacing P.L. 2011, ch. 439, § 2,); P.L. 2011, ch. 439, § 2 (effective July 1, 2012) (repealing and replacing 36 M.R.S. § 151 (2010)). Those changes do not apply to this case.

[3] The parties jointly stipulated to the dismissal of Counts I, II, III and V of the Petition.

1

(GIP), an entity based in Burlington, Vermont, and affiliated with America's Gardening Resources, Inc. (AGR), another Burlington based entity. (Def'n ¶¶ 9-10; Stip. ¶ 12.) MHA purchased the Aircraft in Florida on or about April 17, 2002, and registered the Aircraft with the FAA the same day. (Stip. ¶¶ 19-20.) MHA did not register the Aircraft with any state, municipality, or other jurisdiction. (Stip. ¶ 22.) On April 13, 2002, MHA leased the aircraft to Heritage Flight, an aircraft charter and rental company in the Burlington area. (Stip. ¶¶ 16-17.)

David C. King, an employee of AGR, was the Aircraft's only pilot in 2002 and 2003, and he flew the aircraft on behalf of MHA, GIP, and other GIP affiliates. (Stip. ¶¶ 1, 15.) King took delivery of the Aircraft in Florida on April 17, 2002, and, over the next few days, flew the plane to Portland, Maine, and then to Burlington, Vermont. (Stip. ¶¶ 26-31.) During the next year, King periodically used the Aircraft to pick up his children in Maine for weekend stays in Vermont, and then to return them to Maine at the end of the weekend.[4] (Stip. ¶ 24.)

In their stipulations, the parties specify the whereabouts of the Aircraft between April 17, 2002, and April 17, 2003.[5] (*See* Stips. ¶¶ 27-139.) In summary, the parties agree that between those dates:

(a) The Aircraft was in flight, whether in or outside of Maine, for some portion of the day on at least 101 separate days (Stip. ¶ 141).

(b) The Aircraft was present and located in Maine for some portion of the day on at least 88 separate days (Stip. ¶ 140); of those 88 days:

(i) the Aircraft was in flight for some portion of the day in Maine, and landed in Maine, on at least 46 separate days (Stip. ¶ 143); and

---

[4] The parties agree that King accepted the position with AGR with the understanding that he would have access to an aircraft for personal travel, including travel by King to and from Maine in order to pick up his children and return them to his ex-wife. (Stip. ¶ 8.) Thus, it was always intended that the Aircraft was to be used, in part, in Maine by King, MHA, GIP, or other affiliates. (Stip. ¶ 14.)

[5] Whether the court should consider April 17, 2003, as relevant to these proceedings will be discussed further in the order. The figures quoted are based on upon inclusion of April 17, 2003.

2

(ii) the Aircraft was present in Maine the entire day and remained overnight for purposes of interior work and follow-up work in Oxford, without being flown, for 42 days (Stip. ¶¶ 146-148).

(c) The Aircraft was not present in Maine for any portion of the day for 278 days (Stip. ¶ 142).

MHA never paid any sales or use tax to Florida, Vermont, Maine, or any other state in connection with its purchase and subsequent use of the Aircraft. (Stip. ¶ 149.)

On February 23, 2007, Maine Revenue Services (MRS) sent MHA an assessment for Maine use tax and interest. (Stip. ¶ 150.) On March 22, 2007, MHA requested reconsideration of the assessment. (Stip. ¶ 151.) On January 9, 2008, MRS upheld the assessment. (Stip. ¶ 152.) MHA timely appealed by filing a petition for review of final agency action on February 8, 2008, in Kennebec County Superior Court. The matter was stayed on March 27, 2008, until 30 days after the Law Court issued a decision on one of three similar cases then pending in Kennebec Superior Court: *Blue Yonder, LLC v. State Tax Assessor*, KEN-AP-08-04; *Victor Bravo Aviation, LLC, v. State Tax Assessor*, KEN-AP-08-08; and *Crosswind Air, Inc. v. State Tax Assessor*, KEN-AP-08-14.

This appeal was originally filed in the Kennebec County Superior Court, then transferred to the Business and Consumer Court on July 30, 2009. The stay was lifted on December 7, 2011, after final resolution of the *Blue Yonder* and *Victor Bravo* cases. *See Victor Bravo Aviation, LLC v. State Tax Assessor*, 2011 ME 50, 17 A.3d 1237; *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, 17 A.3d 667.

## DISCUSSION

### I. STANDARD OF REVIEW

When a taxpayer appeals from a reconsideration decision of the Assessor:

The Superior Court shall conduct a de novo hearing and make a de novo determination of the merits of the case. Either the taxpayer or the assessor may

3

raise on appeal in Superior Court any facts, arguments or issues that relate to the assessor's decision on reconsideration, regardless of whether the facts, arguments or issues were raised during the reconsideration proceeding being appealed, provided that the facts, arguments or issues are not barred by any other provision of law. The court shall make its own determination as to all questions of fact or law, regardless of whether the questions of fact or law were raised during the reconsideration proceeding.

36 M.R.S. § 151; *accord Blue Yonder*, 2011 ME 49, ¶ 6, 17 A.3d 667. MHA, as the taxpayer, bears the burden of proof. *See* 36 M.R.S. § 151.

The facts in this case are not in issue, only the application of relevant statutes and case law to those facts.

## II. LEGAL FRAMEWORK

Pursuant to 36 M.R.S. § 1861 (2011), "[a] tax is imposed . . . on the storage, use or other consumption in this State of tangible personal property or a service, the sale of which would be subject to [sales or casual rental] tax under section 1764 or 1811," respectively. Storage "includes any keeping or retention in this State of tangible personal property purchased at retail sale." 36 M.R.S.A. § 1752(15) (Supp. 2002). Use "includes the exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale . . . ." 36 M.R.S.A. § 1752(21) (1990).

Maine use tax is a corollary to the sales tax: "[t]he purpose of the Maine use tax is to diminish the incentive to purchase goods for use in Maine at out-of-state locations where there are lower, or no sales taxes." *Blue Yonder*, 2011 ME 49, ¶ 8, 17 A.3d 667. "To prevent," however, "an overbroad application of the use tax, the Legislature established certain exemptions from the use tax for instances where the use of personal property in Maine is insufficient to justify use taxation." *Id.*; *accord* 36 M.R.S.A. § 1760 (1990 & Supp. 2002) (listing transactions upon which or in connection with "no tax on sales, storage or use may be collected" during the

4

time period relevant to this case). Generally, exemptions to use taxation are construed narrowly. *See J & E Air, Inc. v. State Tax Assessor*, 2001 ME 95, ¶¶ 10-11, 773 A.2d 452; *Brent Leasing Co. v. State Tax Assessor*, 2001 ME 90, ¶ 15, 773 A.2d 457.

The exemption at issue in the present case relates to personal property purchased and used by the present owner outside the State for more than 12 months. *See* 36 M.R.S.A. § 1760(45). In full, the exemption provides:

> **45. Certain property purchased outside the State.** Sales of property purchased and *used by the present owner outside the State*:
>
> **A.** If the property is an automobile, as defined in Title 29-A, section 101, subsection 7, and if the owner was, at the time of purchase, a resident of the other state and either employed or registered to vote there;
>
> **A-1.** If the property is a watercraft or all-terrain vehicle that is registered outside the State by an owner who at the time of purchase was a resident of another state and the watercraft or all-terrain vehicle is present in the State not more than 30 days during the 12 months following its purchase for a purpose other than temporary storage; or
>
> **B.** *For more than 12 months in all other cases.*
>
> *For purposes of this subsection, 'use' does not include storage, but means actual utilization of the property for a purpose consistent with its design.* Property, other than automobiles, watercraft and all-terrain vehicles, that is required to be registered for use in this State does not qualify for exemption unless it was registered by its present owner outside this State more than 12 months prior to its registration in this State.

*Id.* (emphasis added).[6]

---

[6] The exemption in section 1760(45) has been subsequently and substantially amended. The relevant exemption now provides:

**45. Certain property purchased outside state.** Sales of property purchased and used by the present owner outside the State:

. . . .

**A-3.** If the property is an aircraft not exempted under subsection 88 or 88-A and the owner at the time of purchase was a resident of another state or tax jurisdiction and the aircraft is present in this State not more than 20 days during the 12 months following its

The Law Court has construed the exemption in section 1760(45) to apply "if the use of the aircraft outside of Maine was sufficiently substantial to make unjust the imposition of a use tax in Maine." *Blue Yonder*, 2009 ME 49, ¶ 22, 17 A.3d 667 (rejecting an interpretation of the statute that one day's presence in Maine subjected the owner to use tax).

III.  ANALYSIS

A.  Relevant Time Period: 365 days or 366 days

As a preliminary matter, the parties dispute whether the relevant time period includes 365 or 366 days. MHA asserts that it begins April 17, 2002, and ends on April 16, 2003; the Assessor asserts the time period begins April 17, 2002, and ends on April 17, 2003. This "time period" issue arises out of the language of section 1760(45)(B), which provides that no use tax is due on "[s]ales of property purchased and used by the present owner outside the State . . . [*f*]*or more than 12 months*." 36 M.R.S.A. § 1760(45) (emphasis added). The parties agree that the

---

purchase, exclusive of days during which the aircraft is in this State for the purpose of undergoing "major alterations," "major repairs" or "preventive maintenance" as those terms are described in 14 Code of Federal Regulations, Appendix A to Part 43, as in effect on January 1, 2005. For the purposes of this paragraph, the location of an aircraft on the ground in the State at any time during a day is considered presence in the State for that entire day,. and a day must be disregarded if at any time during that day the aircraft is used to provide free emergency or compassionate air transportation arranged by an incorporated nonprofit organization providing free air transportation in private aircraft by volunteer pilots so children and adults may access life-saving medical care; or

B.  For more than 12 months in all other cases.

Property, other than automobiles, watercraft, snowmobiles, all-terrain vehicles and aircraft, that is required to be registered for use in this State does not qualify for this exemption unless it was registered by its present owner outside this State more than 12 months prior to its registration in this State. If property required to be registered for use in this State was not required to be registered for use outside this State, the owner must be able to document actual use of the property outside this State for more than 12 months prior to its registration in this State. For purposes of this subsection, "use" does not include storage but means actual use of the property for a purpose consistent with its design.

36 M.R.S. § 1760(45) (2011).

6

Assessor's inclusion of April 17, 2003, for calculating the "period of use" outside of Maine adds at least a portion of one day into the use calculations because on the 366th day, King flew the Aircraft from Burlington to Portland and back again. (*See* Stip. ¶ 139.)

MHA argues that a year is 365 days, and only includes one April 17th. The Assessor, on the other hand, asserts that the longer period it proposes was implicitly approved by the Law Court in *Victor Bravo*, in which the parties stipulated to facts that included a 366-day period. A close reading of both *Victor Bravo* and *Blue Yonder*, however, reveals that the Law Court did not address this issue directly. Thus, this Court looks to the clear language of the statute, which indicates that the exemption applies to use "outside the State . . . *for more* than 12 months." 36 M.R.S.A. § 1760(45) (emphasis added). Accordingly, the Court concludes that the 366-day period espoused by the Assessor is correct. In any event, as the parties appear to agree, the addition of one day has little impact, if any, on the legal analysis in this case. *See Blue Yonder*, 2011 ME 49, ¶ 4 n.3, 17 A.3d 667.

B.  Substantial Use Test: Quantitative and/or Qualitative Analysis of the Aircraft's Use Within and Without Maine

As noted earlier, *Blue Yonder* explained that "the Legislature established certain exemptions from the use tax for instances where the use of personal property in Maine is insufficient to justify use taxation." *Id.* ¶ 8, 17 A.3d 667. From that premise, the Law Court articulated a "substantial use" test providing that the section 1760(45) exemption applies "if the use of the aircraft outside of Maine was *sufficiently substantial to make unjust the imposition of a use tax* in Maine." *Id.* ¶ 22, 17 A.3d 667 (emphasis added); *see also Victor Bravo*, 2011 ME 50, ¶¶ 20-21, 17 A.3d 1237 (applying the substantial use test).

MHA argues that its use of the Aircraft outside of Maine was sufficiently substantial to qualify for the exemption. Taking cues from the Law Court's percentage analysis in *Blue*

7

*Yonder* and *Victor Bravo*,[7] MHA asserts that the substantial use test is 1) strictly a quantitative analysis 2) that compares the Aircraft's *use* in Maine to the Aircraft's *presence* outside of Maine. MHA also asserts that of the 88 days or portions of days on which the plane was physically in Maine (Stip. ¶ 140), the calculation of these components of the analysis should not include the days on which the plane was in Oxford for repairs (42 days) or made only brief stops in Maine (16 days). Thus, MHA argues that it meets the substantial use test because the Aircraft was in Maine only 8% of the time (30 days) during the first year after purchase and was outside the state 92% of the time.

The Assessor, on the other hand, urges that the substantial use test is both quantitative *and* qualitative. The Assessor first argues, directly contrary to MHA's assertion, that the elements of the *quantitative* part of the analysis require a comparison of the Aircraft's *presence* in Maine with *use* outside of Maine. In support, the Assessor points to the statutory language within the exemption that "'use' does not include storage, but means actual utilization of the property for a purpose consistent with its design." 36 M.R.S.A. § 1760(45). The Assessor contends that only the days during which the Aircraft was used — meaning, in flight — for some portion of the day qualify as "actual utilization of the property for a purpose consistent with its design." Relying upon the stipulated 101 total "flight days" (*see* Stip. ¶ 141), the Assessor's characterization of this definition reduces to 59 the number of days the Aircraft was "in flight" outside of Maine during the first year after its purchase.[8] Stated another way, the plane was only used outside of the state approximately 16% of the time during that first year. Finally, according

---

[7] The Law Court determined that the aircraft in *Blue Yonder* was used outside the State "roughly *ninety-four percent* of the first twelve months after purchase," which was a sufficiently substantial period of time to qualify for the exemption. *Blue Yonder*, 2011 ME 49, ¶ 24, 17 A.3d 667. In *Victor Bravo*, however, the court found that the aircraft's use outside of Maine was about 57% of the first year, which was not sufficiently substantial and the exemption did not apply. *See Victor Bravo*, 2011 ME 50, ¶¶ 21-22, 17 A.3d 1237.

[8] 101 total flight days minus 42 overnight days in Oxford, Maine.

8

to the Assessor, the *qualitative* portion of the substantial use test takes into account the nature and extent of the Aircraft's presence in Maine, which requires a case-by-case analysis of many factors. The Assessor asserts that the stipulated facts informing the qualitative analysis in the instant case are insubstantial and do not alter the result of the quantitative analysis that the Aircraft's use outside of Maine was not sufficiently substantial to qualify for the exemption.

The Court concludes that the Assessor's characterization of the substantial use test as both a quantitative and a qualitative analysis is correct. The *Blue Yonder* and *Victor Bravo* decisions include elements of both: a quantitative analysis of the extent of the use within and without of the state (i.e., 94% and 57% use outside Maine, respectively), and a qualitative analysis of the type of use within and without of the state (i.e., partial days, overnights, Angel flights, and trips to other states). *See Victor Bravo*, 2011 ME 50, ¶¶ 20-22, 17 A.3d 1237; *Blue Yonder*, 2011 ME 49, ¶¶ 3-4, 23-24, 17 A.3d 667.

The Assessor acknowledges that the Law Court's analysis in *Blue Yonder* and *Victor Bravo* did not include a comparison of the Aircrafts' *presence* in Maine to its *use* outside of Maine. However, as the Assessor explains, the summary judgment records in those cases did not include the extent of flights outside of Maine because 1) the Law Court had not yet created the substantial use test and, 2) thus, the Law Court assumed the "use" outside of Maine involved both use and presence. *See Victor Bravo*, 2011 ME 50, ¶ 20, 17 A.3d 1237; *Blue Yonder*, 2011 ME 49, ¶¶ 4, 24, 17 A.3d 667. In contrast, the Assessor argues that those undefined assumptions are not necessary here because the parties have stipulated with particularity to the use and presence of MHA's Aircraft within and without of Maine during the relevant time period.

MHA takes issue with the Assessor's formula for calculating the *days of use in Maine* by including both physical presence and flight time, but only including flight time for computing

9

*days of use outside of Maine.* MHA argues that this formulation is unfair, internally inconsistent and may violate the Commerce Clause. MHA further argues that airplanes

> are not designed to be flying 100% of the time – they are also designed to sit on the ground between flights. Just because the aircraft was only flying for 101 days during the first year, does not mean it is in "storage" for the other 264 days of the year. A computer is not "in storage" when it is powered off, a "pencil" is not in storage when it is not writing, and a car is not in storage when it is sitting in one's driveway or parking lot, at the ready, awaiting its next use.

(Pet.'s Reply Br. 2.) MHA asserts that storage of an aircraft is the equivalent of putting the plane away in a hangar for an extended period of time, and not readily available to take its next flight. At oral argument, the Assessor clarified that its position is not dichotomous: a plane is not either in use or in storage. Rather, the Assessor contends that regardless of what a plane is doing when not in flight, it is not in "use" as contemplated by the exemption.

The Assessor's interpretation of "use" in section 1760(45) is at least facially consistent with the use tax statutes. The use tax applies to property that is both used and stored within the State. *See* 36 M.R.S. § 1861. The exemption, however, limits the definition of use to preclude "storage" and defines use for purposes of the exemption as "actual utilization of the property for a purpose consistent with its design." 36 M.R.S.A. § 1760(45).

Nevertheless, for three reasons, the court does not agree with the Assessor's interpretation of "use" in this case as being only flight time. First, the Law Court's analysis in both *Blue Yonder* and *Victor Bravo* does not indicate such a distinction.

> [W]e conclude that the subsection (45)(B) exemption from the use tax applied if the use of the aircraft *outside* of Maine was sufficiently substantial to make unjust the imposition of a use tax in Maine. Although the parties seek a more categorical determination from us, we decline to establish any bright line. Determining whether the use *outside* of Maine was substantial will require a careful examination of the unique facts of each case.

10

2011 ME 49, ¶ 22, 17 A.3d 667 (emphasis added); *accord* 36 M.R.S.A. § 1760(45) ("Sales of property purchased and used by the present owner *outside* the State . . . [f]or more than 12 months . . . ." (emphasis added)). Despite this language emphasizing use outside of Maine, the Law Court proceeds to analyze the *Blue Yonder* aircraft's use *inside* Maine, noting that it "was present in Maine for at least twenty-one full days . . . and for as many as twenty-five *dates*," constituting use "within Maine for six or seven percent of its first twelve months." 2011 ME 49, ¶ 23, 17 A.3d 667. The Law Court concludes that "the aircraft was 'used by the present owner outside the State' during roughly ninety-four percent of the first twelve months after purchase." *Id.* ¶ 24, 17 A.3d 667 (quoting 36 M.R.S.A. § 1760(45) (Supp. 2002)). The only mention of the aircraft's use outside of Maine is the trip from Minnesota to Massachusetts after purchase, the aircraft's registration in Massachusetts, and Angel Flight program trips to Massachusetts from Maine. *Id.* ¶¶ 3-4, 23, 17 A.3d 667. The Law Court makes no distinction between use and presence outside of Maine, primarily focusing its analysis on the use or presence of the airplane within Maine.

Similarly, in *Victor Bravo*, the Law Court categorizes the aircraft's use and presence within Maine: 37 trips to Maine and present 156 days in Maine the first year after purchase. 2011 ME 50, ¶ 20, 17 A.3d 1237. Regarding use outside of Maine, the Law Court notes that the "aircraft operated in various other states, including Connecticut, where Victor Bravo was organized, when it was not in Maine." *Id.* The Court concludes that Victor Bravo used the aircraft outside the state about 57% of the time during the first year of ownership, a period of time that was not so substantial as to make it unjust to impose Maine use tax. *Id.* ¶¶ 21-22, 17 A.3d 1237. Again, the Law Court makes no distinction between use and presence outside of Maine, primarily focusing its analysis on the use or presence of the airplane within Maine.

11

Second, the Court agrees with MHA that airplanes are not designed solely for flight — were that so, they would not have landing gear.[9] Third, a review of the utilization of Mile High's Aircraft during the relevant time period shows that the Aircraft, once the repairs/upgrades were complete, was used on a weekly basis, and typically more than once a week. The court does not accept that such consistent utilization of the Aircraft is not "use" as contemplated by the exemption.

For these three reasons, the Court will not limit its analysis to the 101 total flight days, as urged by the Assessor. Consistent with the analysis in *Blue Yonder* and *Victor Bravo*, the Court will compare all of the time spent outside of the state (whether in flight or not) with the amount of time spent inside the state (whether in flight or not) in its quantitative analysis.

C.    Substantial Use Test: Application

In the quantitative analysis, MHA contends that the court should not consider: 1) the 16 brief stops in Maine, in which the Aircraft's time on the tarmac ranged from less than 1 hour to 3 to 4 hours; and 2) the 42 days the Aircraft spent in Oxford for repairs/upgrades. MHA also contends that the Assessor incorrectly and unreasonably quantifies a "20 to 30 minute stop, or a two or three hour stop, as an *entire day*, in Maine." (Pet.'s Br. 7.)

In particular, MHA argues that days the Aircraft spent in Maine for repair/upgrades should not be included because it was the Assessor's stated policy not to include time spent doing such work. MHA cites an advisory letter from MRS dated December 21, 2006, which addresses the use tax exemption for aircraft as described in 36 M.R.S. § 1760(88) (2011)[10]: "**Aircraft.** Sales or leases of aircraft that weigh over 6,000 pounds, that are propelled by one of

---

[9] In contrast, the typical watercraft is designed only for use in water and has no independent means of traveling out of the water.

[10] The exemption has not been amended since the date of the advisory letter.

12

more turbine engines or that are in use by a Federal Aviation Administration classified 135 operator." The advisory letter indicates that "for periods prior to January 1, 2007, days in which an aircraft purchased outside of Maine is periodically present in Maine solely for performance of repairs of the aircraft do not constitute taxable use of the aircraft in Maine." (Stip. Exh. C 1-2.)

MHA's exhortation to exclude consideration of brief stops and maintenance days within the State in the quantitative analysis is without merit. The use tax applies to property that is both used and stored within the State. *See* 36 M.R.S. § 1861 (2011). Use "includes the exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale . . . ." 36 M.R.S.A. § 1752(21) (1990). Storage "includes any keeping or retention in this State of tangible personal property purchased at retail sale." 36 M.R.S.A. § 1752(15) (Supp. 2002). The 16 brief stops constitute use in Maine because MHA exercised a right over the Aircraft by bringing it into the state. Further, the Aircraft's 42 maintenance days in Oxford at the very least qualify as storage, if not use, within the State. Finally, the Court is not persuaded by MHA's reliance on the advisory letter because it post-dates the relevant time period in this matter and addresses a different use tax exemption. Thus, these disputed periods of time will be considered.

Using full-day calculations for the above considerations, the Court determines that the Aircraft's percentage of use outside of Maine during the first twelve months of ownership is 75.96% (278/366). *Compare Blue Yonder*, 2011 ME 49, ¶ 24, 17 A.3d 667 (94% use outside of Maine constitutes substantial use and warrants an exemption from use tax), *with Victor Bravo*, 2011 ME 50, ¶ 21, 17 A.3d 1237 (57% use outside of Maine is not substantial use and warrants imposition of Maine use tax). In a stroke of jurisprudential cruelty, the result of the quantitative analysis in the present case is exactly between the results in *Blue Yonder* and *Victor Bravo*.

13

Notwithstanding MHA's assertion that the substantial use test is strictly a *quantitative* analysis, it appears to employ a qualitative analysis in an effort to bring the case closer to *Blue Yonder* than to *Victor Bravo*. MHA points out that the 42 overnights the Aircraft spent in Maine were only for the purpose of undergoing maintenance, as opposed to the 121 overnight stays in Maine in *Victor Bravo*. 2011 ME 50, ¶ 5, 17 A.3d 1237. It also notes that the 16 stipulated brief stops are typical of the aircraft's non-overnight use in Maine, thus weighing in favor of less substantial use within the State. *See id.*, ¶ 19, 17 A.3d 1237 (stating that a court "must examine the extent of the aircraft's use inside and outside of Maine"). (Stip. ¶ 144.)

The Assessor argues that the purpose of the use tax is particularly relevant here because, when MHA purchased the Aircraft, it always intended the plane to be used in Maine *See Blue Yonder*, 2011 ME 49, ¶ 8, 17 A.3d 667. (*See* Stip. ¶ 14.) The Assessor asserts that the 44 trips to Maine by the Aircraft (more than the 37 trips in *Victor Bravo*) is "ongoing" Maine use. *See Victor Bravo*, 2011 ME 50, ¶ 21, 17 A.3d 1237. Further, the Assessor argues that of the 101 total flight days, 46 involved flights landing in Maine, roughly 45.5% of the total flights, which is more than minimal use in Maine.

While the Assessor asserts that a quantitative calculation based on counting "partial days" as "full days" is required, the Law Court has indicated that there is a distinction between days and *dates*. In *Blue Yonder*, the aircraft in question was present in Maine on 25 dates, but only 21 of those occasions were full days. 2011 ME 49, ¶ 4, n.3, 17 A.3d 667. The Law Court thus used the 21-day figure because there was no dispute over it. *See id.*

In the present case, more than half of the days the Aircraft was used in Maine were partial days. Further, although the Aircraft was used in Maine on 88 dates (42 full days and 46 partial days) during the relevant time period, the Aircraft also was used on 324 dates (46 partial days

14

and 278 full days) outside of Maine during the same time period. Unlike *Victor Bravo I*, where the plane spent 151 full days within Maine, the Mile High Aircraft only spent 42 full days in Maine when it was undergoing maintenance. *Cf.* 36 M.R.S. § 1760(45)(A-3) (2011) (excluding from consideration days in which the aircraft was "undergoing 'major alterations,' 'major repairs' or 'preventative maintenance'" within Maine). Further, as the parties have stipulated, the Aircraft's trips to Maine (not including the Oxford days) were brief stops: "the Aircraft would typically remain on the tarmac in Maine from between 20 to 30 minutes to several hours." (Stip. ¶ 144.)

Based on these qualitative considerations of the nature and extent of the use within Maine (i.e., the partial days; the stipulated brief stops; and the minimal overnight usage in Maine) in tandem with the quantitative analysis, the Court concludes that to impose use tax on the Aircraft would be an "overbroad application" of the use tax because "the use of personal property in Maine is insufficient to justify use taxation." *Blue Yonder*, 2011 ME 49, ¶ 8, 17 A.3d 667. In the language of *Blue Yonder* and *Victor Bravo*, after "examin[ing] the extent of the aircraft's use inside and outside of Maine," *Victor Bravo*, 2011 ME 50, ¶ 19, 17 a.3d 1237, "the use of the aircraft outside of Maine was sufficiently substantial to make unjust the imposition of a use tax in Maine," *Blue Yonder*, 2011 ME 49, ¶ 22, 17 A.3d 667.

## CONCLUSION

Based upon the foregoing, the court concludes that the Aircraft qualifies for the exemption in 36 M.R.S.A. § 1760(45)(B) (Supp. 2002) and no use tax is due. Accordingly, no interest is due either.

Pursuant to M.R. Civ. P. 79(a), the clerk is instructed to enter and incorporate this order into the docket by reference and the entry is:

15

Judgment is entered in favor of Petitioner Mile High Air, LLC on Count IV and Count VI of the Petition.

Date:   June 15, 2012

Thomas E. Humphrey
Chief Justice, Superior Court

16

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-09-23

MILE HIGH AIR, LLC,

           Petitioner,

v.

STATE TAX ASSESSOR,

           Respondent

)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON MOTION FOR
RECONSIDERATION

Respondent State Tax Assessor moves, pursuant to M.R. Civ. P. 59(e), for an order reconsidering, or in the alternative, clarifying and amending, this Court's Decision on 80C Appeal (As Corrected), dated June 15, 2012 (the "Decision").[1] After consideration of the parties' briefs, the Court corrects two errors in the Decision. Correction of these errors does not alter the Court's analysis or the outcome in the matter.

The Court orders as follows:

1. On page 8, line 17, of the Decision, the Court strikes the language from "Relying upon the stipulated 101 total 'flight days'" to the end of the paragraph on page 9 and inserts in its place:

Thus, after reducing the days of use outside of Maine during the first year after the plane's purchase to the stipulated 101 "flight days" (see Stip. ¶ 141), the plane was only used outside of the state approximately 28% of the time. According to the Assessor, the qualitative portion of the substantial use test takes into account the nature and purpose of the Aircraft's presence in Maine, which requires a case-by-case analysis of many factors. The Assessor asserts that the stipulated facts informing the

---

[1] In its motion for reconsideration, the State Tax Assessor clarified its position at oral argument regarding the qualitative analysis utilized by the Court. The Court considers the Assessor's position on this issue to be sufficiently clear on the record by virtue of its motion and explanation, but is not persuaded by the Assessor's position on the qualitative analysis. *See Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 22, 17 A.3d 667 ("Determining whether the use outside of Maine was substantial will require a careful examination of the unique facts of each case.")

1

qualitative analysis in the instant case do not alter the result of the quantitative analysis that the Aircraft's use outside of Maine was no sufficiently substantial to qualify for the exemption.

2. On page 15, line 2, of the Decision the Court substitutes "89" for "151."

Pursuant to M.R. Civ. P. 79(a), the clerk is instructed to enter and incorporate this order into the docket by reference.

Date: July 18, 2012

Thomas E. Humphrey
Chief Justice, Superior Court

Entered on the Docket: 7·18·12
Copies sent via Mail ___ Electronically ✓

2

BCD AP-09-23

Mile High Air, LLC
                    Petitioner
v.

State Tax Assessor
                    Respondent


Attorneys:

For petitioner:

Jonathan Block
Pierce Atwood

For respondent:
Scott Boak, AAG
Office of the Attorney General