2008 ME 148

**Gerhard SCHAEFER**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued: May 15, 2008.

Decided: Sept. 25, 2008.

G. Steven Rowe, Attorney General, Peter M. Rosenberg, Asst. Atty. Gen. (orally), Augusta, ME, for the State Tax Assessor.

Peter R. Roy, Esq. (orally), Roy, Beardsley, Williams & Granger, LLC, Ellsworth, ME, for Gerhard Schaefer.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] The State Tax Assessor appeals from a declaratory judgment entered in the Superior Court (Hancock County, *Cuddy, J.*) in favor of Gerhard Schaefer on his request for declaratory judgment. The Superior Court construed 36 M.R.S. § 175–A(1) (2007) and declared in its judgment that the failure of the State to renew the notice of a tax lien filed pursuant to section 175–A(1), within ten years, results in the lien lapsing, and renders it unenforceable against the taxpayer. The Assessor contends that the court erred as a matter of law in interpreting the statute, and argues that the failure to renew the notice of lien within the ten-year period affects only the State's priority as against third parties, but does not affect the validity or enforceability of the lien against Schaefer. We disagree and affirm the Superior Court's judgment.

[¶ 2] Schaefer was the vice president of Ceramic Tile Center, Inc. (CTC, Inc.) and the president of Consolidated Tile Contractors Corporation (CTC Corp.). Both businesses were incorporated and authorized to conduct business in Maine.

[¶ 3] Neither CTC, Inc., nor Schaefer on behalf of CTC, Inc., paid sales tax collected for April, May, July, September, October, November, and December of 1989; January, February, March, April, May, August, September, October, and December of 1990; and January, February, March, May, June, July, and August of 1991. The Assessor determined that Schaefer was a person responsible for paying trust fund taxes due from CTC, Inc.

[¶ 4] CTC Corp. and Schaefer failed to pay sales taxes collected for October and December of 1991. The Assessor determined that Schaefer was a person responsible for paying the trust fund taxes due from CTC Corp.

[¶ 5] In February of 1992, the Tax Assessor recorded the notices of tax liens in the Hancock County Registry of Deeds for the unpaid taxes from 1989, 1990, and 1991. On August 26, 2002, the Assessor filed a consolidated notice of the State's tax liens in the Hancock County Registry of Deeds reflecting the three liens originally recorded in February of 1992. None of the assessments have been paid. On May 5, 2006, Schaefer filed a complaint for a declaratory judgment against the Assessor requesting that the Superior Court construe the statutory provision and determine his rights with respect to the notices of liens, and declare the liens to be invalid and unenforceable as against him. On November 30, 2007, the court entered an order concluding that the tax liens had lapsed and ordering the Assessor to release all of the liens. The Assessor filed this appeal.

[¶ 6] The Assessor argues that section 175–A(1) provides that a tax lien arises against the taxpayer automatically upon the underlying assessment becoming final, but attains priority against certain third parties only upon the filing of a lien notice. Therefore, the Assessor contends, the court erred as a matter of law in interpreting the statute as explicitly providing for a statute of limitations or as being a statute of repose.

[¶ 7] We review the interpretation of a statute de novo. *Genujo Lok Beteiligungs GmbH v. Zorn*, 2008 ME 50, ¶ 12, 943 A.2d 573, 578. We have stated:

Our purpose in construing a statute is to give effect to the legislative intent. In determining the legislative intent, we look first to the plain meaning of the statutory language, and we construe that language to avoid absurd, illogical or inconsistent results. In addition to examining the plain language, we also consider "the whole statutory scheme of

which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved."

*Wilson v. Bath Iron Works*, 2008 ME 47, ¶ 11, 942 A.2d 1237, 1240 (quoting *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994)) (citations omitted).

[¶ 8] The statute at issue, 36 M.R.S. § 175–A(1) (2007), provides:

**1. Filing.** If any tax imposed by this Title or imposed by any other provision of law and authorized to be collected by the bureau is not paid when due and no further administrative or judicial review of the assessment is available pursuant to law, the assessor may file in the registry of deeds of any county, with respect to real property, or in the office of the Secretary of State, with respect to property of a type a security interest in which may be perfected by a filing in such office under Title 11, Article 9–A, a notice of lien specifying the amount of the tax, interest, penalty and costs due, the name and last known address of the person liable for the amount and, in the case of a tax imposed by this Title, the fact that the assessor has complied with all the provisions of this Title in the assessment of the tax. The lien arises at the time the assessment becomes final and constitutes a lien upon all property, whether real or personal, then owned or thereafter acquired by that person in the period *before the expiration of the lien.* The lien imposed by this section is not valid against any mortgagee, pledgee, purchaser, judgment creditor or holder of a properly recorded security interest until notice of the lien has been filed by the assessor, with respect to real property, in the registry of deeds of the county where such property is located and, with respect to personal property, in the office in which a financing statement for such personal property is normally filed. Notwithstanding this subsection, a tax lien upon personal property does not extend to those types of personal property not subject to perfection of a security interest by means of the filing in the office of the Secretary of State. The lien is prior to any mortgage or security interest recorded, filed or otherwise perfected after the notice, other than a purchase money security interest perfected in accordance with Title 11, Article 9–A. In the case of any mortgage or security interest properly recorded or filed prior to the notice of lien that secures future advances by the mortgagee or secured party, the lien is junior to all advances made within 45 days after filing of the notice of lien, or made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien. Subject to the limitations in this section, *the lien provided in this section has the same force, effect and priority as a judgment lien and continues for 10 years from the date of recording unless sooner released or otherwise discharged. The lien may,* within the 10–year period, or within 10 years from the date of the last extension of the lien in the manner provided in this subsection, *be extended by filing for record in the appropriate office a copy of the notice* and, from the time of filing, that lien must be extended for 10 years unless sooner released or otherwise discharged.

(Emphasis added.)

[¶ 9] The Superior Court concluded that "[t]he plain clear language of the statute is that in order to be re-vitalized, the lien (not just the 'notice of lien') must be extended or it expires and becomes unenforceable," a conclusion that the Assessor contends is in error because the notice of filing merely affects priority.

[¶ 10] The Assessor points to the language stating that "[t]he lien arises at the time the assessment becomes final and constitutes a lien on all property, whether real or personal, then owned of thereafter acquired by that person in the period before the expiration of the lien." 36 M.R.S. § 175–A(1). The language in this portion of the statute, however, provides that the lien arises at the time the assessment is final, but also states that it becomes unenforceable when the lien expires. The use of the word "expiration" suggests a passage of time and therefore leads to an interpretation of the statute that there is a time when the lien expires, i.e., after ten years.

[¶ 11] The Assessor also contends that the references in the statute describing the effects of filing on priority of the lien suggest that the filing purports only to establish the lien's priority but has no effect on the enforceability of the lien. That the statute deals with the priority of the tax lien when a notice of lien is filed in the appropriate place, however, does not mean that it is intended to deal exclusively with the priorities.

[¶ 12] The last sentence in the statute cannot be ignored. It states,

The lien may, within the 10–year period, or within 10 years from the date of the last extension of the lien in the manner provided in this subsection, be extended by filing for record in the appropriate office a copy of the notice and, from the time of filing, that lien must be extended for 10 years unless sooner released or otherwise discharged.

36 M.R.S. 175–A(1) (emphasis added).

■ [¶ 13] Moreover, section 175–A(2) (2007), provides:

2. Release. The assessor shall issue to the taxpayer a certificate of release of the lien or release all or any portion of the property subject to any lien provid-ed for in this Part or subordinate the lien to other liens if:

A. The assessor finds that the liability for the amount demanded, together with costs, has been satisfied or has become unenforceable by reason of lapse of time.

(Emphasis added.) The Assessor's interpretation of the statute would render this provision meaningless because, without the requirement of filing notice, the lien would never become unenforceable by reason of the lapse of time. We do not construe a statute in a way that renders portions of it meaningless. Bog Lake Co. v. Town of Northfield, 2008 ME 37, ¶ 9, 942 A.2d 700, 704. Rather, the statute must be interpreted as providing at least the possibility that a lapse of time could render a lien unenforceable.

[¶ 14] Moreover, the construction of the statute adopted by the Superior Court and by Schaefer leads to a more harmonious result than that of the Assessor. Although the Assessor urges us to give the language of the statute its plain meaning, he also contends that we must read "lien" as "notice of lien," thus deviating from a plain meaning analysis of the statute.

■ [¶ 15] We could construe the Assessor's contention to be that the statute is ambiguous and that the ambiguity should be resolved in favor of his interpretation. Assuming such ambiguity existed, "the statutes governing the procedures whereby an owner may lose his property for the nonpayment of taxes are to be strictly construed against the taxing authority." Johnson v. Town of Dedham, 490 A.2d 1187, 1190 (Me.1985) (quotation marks omitted).

[¶ 16] Furthermore, even if the statute is ambiguous, we look to the legislative history to determine the Legislature's intent. Although section 175–A(1) does not

have extensive legislative history to shed light on the Legislature's intent, the history that does exist does not favor the construction urged by the Assessor. When section 175–A(1) was amended in 1993, the Legislature extended the previous five-year time period for renewing the lien to the current ten-year time period. The Legislature's statement of fact accompanying the amendment stated that the amendment "provides that a tax lien arises at the time the tax is assessed and increases the period of time during which a tax lien stays in effect before it *must* be renewed." L.D. 596, Statement of Fact (116th Legis. 1993) (emphasis added). This language supports the construction that the Legislature intended a lien to be in effect only when a notice of the lien was filed.[1]

[¶ 17] We affirm the Superior Court's construction of section 175–A(1) that the State must renew its notice of lien within ten years, or the lien expires.

The entry is:

Judgment affirmed.

---

1. We note that the Maine State Bar Association, Standards of Title 202 (2007) provides that records and indices should be examined for a period of eleven years in order to discover any State tax liens recorded within ten years of the date the assessment became final. This standard of title is consistent with our interpretation of the statute as providing that if a notice of lien is not renewed within the ten-year window, the lien expires.