2011 ME 49

**BLUE YONDER, LLC**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued: Sept. 14, 2010.
Decided: April 26, 2011.

Jonathan A. Block, Esq., (orally), Robert A. Creamer, Esq., Pierce Atwood LLP, Portland, ME, for Blue Yonder, LLC.

Janet T. Mills, Attorney General, Pamela W. Waite, Asst. Atty. Gen., Scott W. Boak, Asst. Atty. Gen., (orally), Office of the Attorney General, Augusta, ME, for the State Tax Assessor.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, SILVER, and GORMAN, JJ.

Dissent: LEVY, and MEAD, JJ.

SAUFLEY, C.J.

[¶ 1] This appeal requires us to address the purposes of Maine's use tax as a complement to the sales tax. Based on the statutes in effect at the time of taxation, we conclude that an aircraft that was used briefly in Maine was exempt from the use tax when the aircraft was purchased and delivered outside of Maine, was owned by an out-of-state entity, had never been registered in Maine, and was in Maine for approximately twenty-one full days during its first year of use. Because we conclude that an exemption applied, we vacate the judgment entered on the Business and Consumer Docket (*Humphrey, C.J.*), in which the court concluded that a use tax was properly imposed on the aircraft.

[¶ 2] The aircraft's owner, Blue Yonder, LLC, appeals from the summary judgment entered by the court upon de novo determination whether the use tax was properly imposed. *See* 36 M.R.S. § 151 (2010). Blue Yonder argues that the use tax should not have been imposed because three use tax exemptions apply, 36 M.R.S.A. § 1760(23–C)(C), (45)(B), (82)

(Supp.2002),[1] and because the imposition of the tax violates the Commerce Clause. Blue Yonder also challenges the imposition of interest pursuant to 36 M.R.S.A. § 186 (Supp.2002).[2] We agree with Blue Yonder that the tax was assessed improperly, and we vacate the judgment.

## I. BACKGROUND

[¶ 3] The following facts are undisputed. Blue Yonder is a limited liability company that was organized in 2002 in Massachusetts. The company is owned jointly by Stephen Kahn and his wife, Janet Pendleton. Blue Yonder purchased an aircraft from Cirrus Design Corporation on November 4, 2002, in Minnesota. Kahn flew the aircraft from Minnesota to Massachusetts, where it was registered. The aircraft has never been registered in Maine. No sales or use tax has been paid on the aircraft in any jurisdiction.

1. Section 1760 enumerated the three exemptions addressed by the parties here:

Subject to the provisions of section 1760–C, no tax on sales, storage or use may be collected upon or in connection with:

. . . .

**23–C Certain vehicles purchased by nonresidents.** *Sales of the following vehicles purchased by a nonresident and intended to be driven or transported outside the State immediately upon delivery by the seller:*

A. Motor vehicles, except all-terrain vehicles as defined in Title 12, section 7851 and snowmobiles as defined in title 12, section 7821;

B. Semitrailers;

C. *Aircraft;*

D. Truck bodies and trailers manufactured in the State; and

E. Camper trailers, including truck campers.

If the vehicles are registered for use in the State within 12 months of the date of purchase, the person seeking registration is liable for use tax on the basis of the original purchase price.

Notwithstanding section 1752–A, for purposes of this subsection, the term "nonresident" may include an individual, an association, a society, a club, a general partnership, a limited partnership, a domestic or foreign limited liability company, a trust, an estate, a domestic or foreign corporation and any other legal entity.

. . . .

**45. Certain property purchased outside the State.** *Sales of property purchased and used by the present owner outside the State:*

A. If the property is an automobile, as defined in Title 29–A, section 101, subsection 7, and if the owner was, at the time of purchase, a resident of the other state and either employed or registered to vote there;

A–1. If the property is a watercraft or all-terrain vehicle that is registered outside the State by an owner who at the time of purchase was a resident of another state and the watercraft or all-terrain vehicle is present in the State not more than 30 days during the 12 months following its purchase for a purpose other than temporary storage; or

B. *For more than 12 months in all other cases.*

For purposes of this subsection, "use" does not include storage, but means actual utilization of the property for a purpose consistent with its design. Property, other than automobiles, watercraft and all-terrain vehicles, that is required to be registered for use in this State does not qualify for exemption unless it was registered by its present owner outside this State more than 12 months prior to its registration in this State.

. . . .

**82. Sales of property delivered outside this State.** *Sales of tangible personal property when the seller delivers the property to a location outside this State* or to the United States Postal Service, a common carrier or a contract carrier hired by the seller for delivery to a location outside this State, regardless of whether the property is purchased F.O.B. shipping point or other point in this State and regardless of whether passage of title occurs in this State.

36 M.R.S.A. § 1760 (Supp.2002) (emphasis added).

2. Section 186 has since been amended. *See* P.L.2009, ch. 625, § 3 (effective July 12, 2010) (codified at 36 M.R.S. § 186 (2010)).

[¶ 4] Kahn rented the aircraft from Blue Yonder for his personal and business use as well as for the humanitarian purpose of delivering ill or injured patients to Massachusetts through the Angel Flight Program; he was the only person to operate the aircraft in 2002 and 2003. During those years, Kahn owned properties in Maine, which he visited using the aircraft. The aircraft was not used exclusively outside of Maine during the first twelve months of ownership; it was present in Maine for at least twenty-one full days during that twelve-month period.[3]

[¶ 5] Maine Revenue Service assessed a use tax of $17,313.06 and interest of $8,005.77, for a total assessment of $25,318.83, on or about June 29, 2007, and the State Tax Assessor upheld the imposition of the tax and interest upon reconsideration on December 21, 2007. Blue Yonder appealed from the Assessor's decision to the Superior Court and sought a de novo determination. *See* 36 M.R.S. § 151; M.R. Civ. P. 80C. Upon Blue Yonder's motion, the court entered summary judgment for the Assessor. Blue Yonder appealed.

## II. DISCUSSION

### A. Decision on Appeal and Standard of Review

[¶ 6] When a party seeks review in the Superior Court of a decision issued by the Assessor upon reconsideration, the court must "make a de novo determination of the merits of the case" and "shall make its own determination as to all questions of fact or law, regardless of whether the questions of fact or law were raised during the reconsideration period." 36 M.R.S. § 151. Accordingly, we review the decision of the Superior Court, *see John Swenson Granite, Inc. v. State Tax Assessor*, 685 A.2d 425, 427 (Me.1996), and we do not accord any heightened deference to the Assessor's decision in interpreting the tax statutes, *see Enerquin Air, Inc. v. State Tax Assessor*, 670 A.2d 926, 928–29 (Me. 1996).

[¶ 7] Because this case comes to us upon the entry of a summary judgment in favor of the Assessor, we review whether the court properly determined that there was no genuine issue of material fact and that the Assessor was entitled to judgment as a matter of law. *See* M.R. Civ. P. 56(c). The material facts are not in dispute. Accordingly, this appeal requires us to review the court's interpretation and application of the relevant statutes, which review we undertake de novo as a question of law. *See Koch Ref'g Co. v. State Tax Assessor*, 1999 ME 35, ¶ 4, 724 A.2d 1251, 1252.

### B. Interpretation and Application of the Use Tax Statutes

[¶ 8] The purpose of the Maine use tax is to diminish the incentive to purchase goods for use in Maine at out-of-state locations where there are lower, or no, sales taxes. *Brent Leasing Co. v. State Tax Assessor*, 2001 ME 90, ¶ 11, 773 A.2d 457, 460–61. It is a tax that serves "to minimize unfair competition between intrastate and interstate sales of tangible per-

---

**3.** The Assessor listed twenty-five *dates* on which the aircraft was in Maine. Blue Yonder, however, accurately responded that the Assessor's list contained twenty-one occasions on which the aircraft was "present for at least one day" in Maine. Because the court concluded that the exemption set forth in 36 M.R.S.A. § 1760(45) (Supp.2002) required "exclusive" use outside of Maine for the first twelve months, neither the potential factual dispute nor the distinction between "dates" and "days" was resolved. We use the twenty-one day figure because neither party disputes that the aircraft was in Maine for "more than 20 days," and the discrepancy does not affect our analysis.

sonal property." *See id.* at 460 (quotation marks omitted). Personal property purchased outside of Maine and brought into Maine for use is therefore subject to the use tax, which serves as a complement to the sales tax. *See id.*; *John Swenson Granite, Inc.*, 685 A.2d at 428. To prevent an overbroad application of the use tax, the Legislature established certain exemptions from the use tax for instances where the use of personal property in Maine is insufficient to justify use taxation. *See generally* 36 M.R.S.A. § 1760 (1990 & Supp.2002).

[¶ 9] The applicability of the use tax and exemptions from that tax to the Blue Yonder aircraft requires a review of the statutes that were in place at the time that the taxes were imposed, in light of the purpose of the use tax to reduce "unfair competition between intrastate and interstate sales of tangible personal property." *Brent Leasing Co.*, 2001 ME 90, ¶ 11, 773 A.2d at 460 (quotation marks omitted).

[¶ 10] When we interpret a tax statute, the plain meaning of the statute controls if the statute is unambiguous. *See Stromberg–Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566, 569. To resolve any ambiguity, we look to the legislative history of the statute to determine its meaning. *See Schaefer v. State Tax Assessor*, 2008 ME 148, ¶ 16, 956 A.2d 710, 713. In our interpretation, we seek to avoid "absurd, illogical or inconsistent results." *Stromberg–Carlson Corp.*, 2001 ME 11, ¶ 9, 765 A.2d at 569. Words in a statute "must be given meaning and not treated as meaningless and superfluous." *Id.* We will not read additional language into a statute. *Id.* As noted above, because the Superior Court is directed by statute to rule on questions of law de novo, we do not accord any heightened deference to the Assessor in interpreting the tax statutes. *See Enerquin Air, Inc.*, 670 A.2d at 928–29.

[¶ 11] With these rules of construction in mind, we first examine the two exemptions asserted by Blue Yonder that governed in-state purchases followed by delivery or transport outside of Maine. *See* 36 M.R.S.A. § 1760(23–C), (82). We then analyze the applicability of the remaining exemption, which applied to certain property purchased outside of Maine. *See id.* § 1760(45)(B).

1. Exemptions from Sales Tax for Certain Purchases in Maine

[¶ 12] Blue Yonder contends that subsections (23–C) and (82) applied equally to sales and use taxation. It bases its argument on the introductory language of section 1760, which stated, "Subject to the provisions of section 1760–C, no tax on sales, storage or use may be collected upon or in connection with" the enumerated exemptions. 36 M.R.S.A. § 1760 (Supp. 2002).

[¶ 13] We agree with the Superior Court that we must not interpret the statutes in a manner that would render some of the language superfluous and meaningless. *See Stromberg–Carlson Corp.*, 2001 ME 11, ¶ 9, 765 A.2d at 569; *see also S. Portland Civil Serv. Comm'n v. City of S. Portland*, 667 A.2d 599, 601 (Me.1995) (stating that a more specific statute takes precedence over a more general one). Applying these principles, we read the two exemptions pursuant to their plain language and conclude that they applied only to in-state sales, notwithstanding the prefatory language of section 1760. *See* 36 M.R.S.A. § 1760(23–C), (82).

[¶ 14] The exemption set forth in section 1760(23–C)(C) applied when an aircraft was "purchased by a nonresident and intended to be driven or transported outside the State immediately upon delivery."

Based on the language of the exemption, it was applicable only when the purchase of the aircraft occurred *in Maine* and the aircraft was immediately taken *from Maine* to an out-of-state location. Because of this language, the exemption necessarily applied exclusively to in-state sales and was not applicable to the imposition of use taxation.

[¶ 15] Similarly, section 1760(82) exempted from taxation "[s]ales of tangible personal property when the seller delivers the property to a location outside this State." This exemption eliminated sales taxation of property purchased in Maine but delivered to a location outside of Maine. An interpretation of subsection (82) that made it applicable to any property *purchased* and delivered outside of Maine would entirely thwart the purpose of the use tax. As did the Superior Court, we avoid this absurd result by reading the statute to apply only when the property has been purchased in-state and delivered outside the state. *See Stromberg–Carlson Corp.*, 2001 ME 11, ¶ 9, 765 A.2d at 569.

### 2. Exemption for Certain Property Purchased Outside of Maine

[¶ 16] Ultimately, the only exemption cited by Blue Yonder that could exempt the aircraft at issue here from *use* taxation was set forth in section 1760(45)(B), which exempted from taxation "[s]ales of property purchased and used by the present owner outside the State ... [f]or more than 12 months." 36 M.R.S.A. § 1760(45)(B). The statute as then written did not indicate the quantity of out-of-state use during the twelve-month period that would trigger the exemption.

[¶ 17] The tax exemption articulated in subsection (45)(B) was inherently ambiguous. Evidently in recognition of this lack of clarity, the exemption was recently amended to provide guidance on the issue that we must resolve in this appeal. *See* P.L.2005, ch. 519, § EE–1 (effective Jan. 1, 2007) (codified as subsequently amended at 36 M.R.S. § 1760(45) (2010)).[4] Because the clarifying amendment was not in effect when Blue Yonder purchased the aircraft, however, we must address the statutory ambiguity that existed at the time to determine how much of the first twelve-

---

4. The Legislature has since amended the statute such that it exempts an aircraft purchased by a nonresident from taxation when

> the aircraft is present in this State *not more than 20 days* during the 12 months following its purchase, exclusive of days during which the aircraft is in this State for the purpose of undergoing "major alterations," "major repairs" or "preventive maintenance" as those terms are described in 14 Code of Federal Regulations, Appendix A to Part 43, as in effect on January 1, 2005.... *For the purposes of this paragraph, the location of an aircraft on the ground in the State at any time during a day is considered presence in the State for that entire day, and a day must be disregarded if at any time during that day the aircraft is used to provide free emergency or compassionate air transportation arranged by an incorporated nonprofit organization providing free air transportation in private aircraft*

> *by volunteer pilots so children and adults may access life-saving medical care.*

36 M.R.S. § 1760(45)(A–3) (2010) (emphasis added). This provision is inapplicable here because it was not yet in effect, was not a mere clarification of the prior version of the statute, and was not made retroactive. *Cf. Me. Sch. Admin. Dist. No. 27 v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 108, ¶ 25, 983 A.2d 391, 399 (stating that a statute does not apply retroactively even if it clarifies existing law). We therefore express no opinion on the relationship between the twenty-day limitation now set forth by statute and the purpose of use taxation in Maine. Further, because this record demonstrates only that the Blue Yonder aircraft was in Maine for twenty-one to twenty-five days or dates, with two or more of those dates being for participation in the Angel Flight Program, it is unclear whether recent amendments would have altered the outcome if they had been in place at the time.

month period the aircraft must have spent outside of Maine for the exemption to apply.

[¶ 18] The ambiguous language of the statute could be read to indicate either of two extremes: that the exemption would apply (1) if the aircraft was used outside the state at *any* time during the first twelve months, or (2) only when the aircraft was used *exclusively* outside the state for the first twelve months.

[¶ 19] It would be absurd to interpret the statute to exempt property from use taxation based on *any* use of the property outside of Maine within the first twelve months after purchase. *See Stromberg–Carlson Corp.*, 2001 ME 11, ¶ 9, 765 A.2d at 569. Such a reading would permit avoidance of the use tax simply by transporting property outside of Maine once within twelve months after its out-of-state purchase.

[¶ 20] It would be equally illogical to conclude that the Legislature intended for the tax exemption to apply only if the aircraft was used *exclusively* outside of Maine during the first twelve months. *See id.* The Legislature cannot have intended, for instance, to impose a use tax on any aircraft that landed in Maine briefly for refueling or a single, short visit. Such taxation would be inconsistent with the purpose of a use tax to serve as a complement to the sales tax, *see John Swenson Granite, Inc.*, 685 A.2d at 428.

[¶ 21] Further, when we examine the statutory context of subsection (45)(B), *see Stromberg–Carlson Corp.*, 2001 ME 11, ¶ 9, 765 A.2d at 569, we observe that, in other portions of section 1760, the Legislature explicitly authorized exemptions for items that were intended to be used *exclusively* in certain ways. *See* 36 M.R.S.A. § 1760(21) (Supp.2002) (exempting certain automobiles "used *exclusively* by . . . schools in driver education programs" (emphasis added)); 36 M.R.S.A. § 1760(32) (Supp.2002) (exempting "[s]ales of machinery and equipment for use by the purchaser directly and *exclusively* in research and development in the experimental and laboratory sense" (emphasis added)). Because the Legislature did not require use *exclusively* outside of Maine in the exemption we construe today, we do not read in that additional language. *See Stromberg–Carlson Corp.*, 2001 ME 11, ¶ 9, 765 A.2d at 569.

[¶ 22] Having rejected the two interpretations at the extremes, we must determine how to construe the statute in a reasonable manner that avoids absurd results. *See id.* In the absence of legislative guidance, and taking into account the purpose of use taxation, we conclude that the subsection (45)(B) exemption from the use tax applied if the use of the aircraft outside of Maine was sufficiently substantial to make unjust the imposition of a use tax in Maine. Although the parties seek a more categorical determination from us, we decline to establish any bright line. Determining whether the use outside of Maine was substantial will require a careful examination of the unique facts of each case.

[¶ 23] Here, the Assessor does not dispute that the aircraft at issue was purchased outside of Maine and was registered in Massachusetts. The record reflects that the plane was present in Maine for at least twenty-one full days in the twelve-month period after purchase and for as many as twenty-five *dates*, including partial days. Those Maine trips included flights for the delivery of ill or injured patients to Massachusetts through the Angel Flight Program. Thus, the aircraft was within Maine for six or seven percent of its first twelve months.

[¶ 24] In terms of the exemption, the aircraft was "used by the present owner outside the State" during roughly ninety-four percent of the first twelve months after purchase. 36 M.R.S.A. § 1760(45). We cannot agree with the Assessor's position that an aircraft that is "used outside the State" for about ninety-four percent of its first year of use does not qualify for the exemption. Rather, applying a reasonable interpretation of the exemption, as it existed at the time, we hold that subsection (45)(B) exempted Blue Yonder's aircraft from taxation because Blue Yonder used the aircraft outside of Maine for the first twelve months after purchase, with the exception of only six or seven percent of the year. The use of the aircraft outside of Maine during the first twelve months was, therefore, sufficiently substantial to make the use tax exemption provided in subsection (45)(B) applicable. Accordingly, we vacate the judgment of the Superior Court entered on the Business and Consumer Docket and remand for the reversal of the use tax and interest.

The entry is:

Judgment vacated. Remanded to the Business and Consumer Docket for remand to the State Tax Assessor with instructions to reverse all use tax and interest assessed on Blue Yonder for the Cirrus aircraft purchased in 2002.

LEVY, J., with whom MEAD, J., joins, dissenting.

[¶ 25] I agree with the Court's analysis with respect to the exemptions from the use tax contained in 36 M.R.S.A. § 1760(23–C)(C) and (82) (Supp.2002). I also agree with the Court's conclusion that the exemption established in 36 M.R.S.A. § 1760(45)(B) (Supp.2002) is ambiguous because it is reasonably susceptible to different interpretations. *See Competitive Energy Servs., LLC v. Pub. Utils.*

*Comm'n,* 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. I disagree, however, with the Court's construction of subsection (45)(B) so as to treat property used in Maine during the twelve months following an out-of-state purchase as exempt from taxation unless the use in Maine is shown to have been "sufficiently substantial" to justify imposition of the tax. 2011 ME 49, ¶¶ 22–24, 17 A.3d 667. Because the Legislature did not adopt a substantiality test when it enacted this law, and the Court offers no guidance as to where or how to draw the line between in-state use that is sufficiently substantial and that which is not, I respectfully dissent.

[¶ 26] Section (45)(B) exempts from use taxation "[s]ales of property purchased and used by the present owner outside the State ... [f]or more than 12 months[.]" To construe the statute, I look to the Legislature's general definition of the word "use" in 36 M.R.S. § 1752(21) (2010): " 'Use' includes the exercise in this State of any right or power over tangible personal property incident to its ownership[.]" Subsection (45) also specifically defines use for its purposes as "not includ[ing] storage," but meaning "actual utilization of the property for a purpose consistent with its design." 36 M.R.S.A. § 1760(45). It follows that one who exercises any right or power over property and actually utilizes it for its designed purpose in this State at any time during the twelve-month period following a purchase is not exercising that right or power over the property "outside the State ... for more than twelve months." 36 M.R.S.A. § 1760(45)(B). Because Blue Yonder exercised rights incident to its ownership of its airplane in Maine for a period of no less than twenty-one days during the first twelve months of ownership, it is not entitled to an exemption from the use tax.

[¶ 27] There is nothing absurd or illogical about the preceding construction. It may or may not be sound tax or economic policy to levy the use tax against property used in Maine for as little as a day or two during the twelve-month period following an out-of-state purchase, but those are judgments to be made by the Legislature, not this Court.[5] Further, we need not decide whether a truly de minimis use of an airplane in Maine, such as a single brief stop for refueling, would disqualify a taxpayer from taking the exemption. That scenario is not presented by this case. Moreover, we should not reject a construction of a statute that is fully consonant with the words enacted by the Legislature and avoids the need for any judicial embellishment—like the Court's substantiality requirement—based upon nothing more than the prospect that the construction could produce an absurd or illogical result if we are ever called upon to apply it to an extreme and therefore unlikely scenario.

[¶ 28] The Legislature amended subsection (45) effective January 1, 2007, to specify that, as applied to aircraft, the exemption is available when the aircraft is present in this State for no more than twenty days during the first twelve months of ownership. P.L.2005, ch. 519, § EE–1 (effective Jan. 1, 2007) (codified and subsequently amended at 36 M.R.S. § 1760(45)(A–3) (2010)). The Legislature did not give the amendment retroactive effect. This change in the law was wholly within the province of the Legislature, and we should defer to its choice to apply the amendment prospectively only. Instead, the Court retroactively revises the earlier version of the exemption by adding a substantiality test in an effort to ameliorate what may be a harsh outcome in this case. Ironically, even under the current exemption as modified by the Legislature, Blue Yonder, LLC, would not be entitled to claim the exemption.

[¶ 29] I would affirm the judgment of the Superior Court.

---

5. That the Legislature is fully capable of making such judgments is shown by the companion exemption in 36 M.R.S. § 760(45)(A–1) (2010) for watercraft registered outside of the State by an individual who is a resident of another state at the time of the purchase. Such a purchase is exempt from the Maine use tax if "the watercraft is operated in the State not more than 30 days during the 12 months following its purchase for a purpose other than temporary storage." *Id.*