ENTERED AUG 0 8 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-13-077
JAW-CUM-07-02-14

BMR BRUSNWICK, LLC, et. al.

Petitioners

v.

DECISION AND ORDER

STATE OF MAINE, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,
et. al.

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUL 02 2014

RECEIVED

Respondents

This matter is before the Court on petitioner's 80C appeal of a decision of the Maine Department of Environmental Protection ("MDEP") to issue a stormwater management permit to respondent Northern New England Passenger Rail Authority ("NNEPRA") for the construction of a railroad maintenance facility. Petitioners argue that they are "abutters" under MDEP rules and therefore were entitled to notice of NNEPRA's permit application, which they did not receive. NNEPRA and MDEP argue that petitioners are not abutters and were therefore not entitled to notice under the rules.

## Facts

The facts of this case are not in dispute. NNEPRA plans to construct a passenger train layover facility on land it owns in Brunswick, Maine. One of the permits NNEPRA was required to obtain to build the facility is the Stormwater Law Permit ("Stormwater Permit") under 38 M.R.S. § 420-D

1

(2013). Under MDEP rules, a Stormwater Permit applicant is required to mail notice of the application "to abutters, as determined by local tax records, or other reliable means . . . ." 06-096 C.M.R. ch. 2, § 14(A). NNEPRA did not notify the petitioners of their Stormwater Permit application.

The petitioners own property near the site of the proposed layover facility, however, each of petitioners' lots is separated from NNEPRA's lot by a strip of land owned by the State of Maine.[1] (R. at Tab 12.) In 1991, the Maine Central Railroad Company conveyed the strip of land[2] abutting NNEPRA's lot to the State but reserved for itself a "rail freight easement" over the property. (Stipulations ¶ 4.) Railroad tracks pass over the State's land that NNEPRA and others use to transport passengers and freight. (Stipulations ¶ 5.)

## Analysis

1. Standard of Review

In reviewing agency action pursuant to M.R. Civ. P. 80C, "review is limited to whether the government agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551 (quotation marks omitted). "Considerable deference is given to the agency's interpretation of its own rules, regulations, and procedures, and [the

---

[1] The parties agree that the Brunswick tax map incorrectly shows NNEPRA as the owner of Lot 18 on Tax Map U26. (Stipulations ¶ 1.) The State acquired that lot by deed in 1991 and still owned it as of the date of NNEPRA's permit application. (Stipulations ¶ 2.)
[2] The strip of land consists of Lot 92 on Tax Map U23 and Lot 18 on Tax Map U26. (Stipulations ¶¶ 2-3; R. at Tab 12.)

2

court] will not set aside the agency's findings unless the rule or regulation plainly compels a contrary result." *Mulready v. Bd. of Real Estate Appraisers*, 2009 ME 135, ¶ 13, 984 A.2d 1285 (quotation marks omitted).

2. Standing

NNEPRA challenges petitioners' standing to bring the appeal. "Whether a party has standing depends on the wording of the specific statute involved." *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 9, 953 A.2d 378. In this case, MDEP's rules provide:

> Any person may seek judicial review of a final Commissioner or Board decision by filing a petition in Superior Court in accordance with 5 M.R.S. section 11001 et seq. and M.R. Civ. P. 80C, except where otherwise provided by law. The filing of an appeal with the Board is not a prerequisite for a judicial appeal.

06-096 C.M.R. ch. 2, § 28. Accordingly, the Maine Administrative Procedure Act ("Maine APA") is the governing statute for petitioners' appeal.

Under the Maine APA, "any person who is aggrieved by final agency action" is entitled to judicial review. 5 M.R.S. § 11001(1) (2013). "A person is aggrieved within the meaning of the APA if that person has suffered particularized injury—that is, if the agency action operated prejudicially and directly upon the party's property, pecuniary or personal rights." *Nelson*, 2008 ME 91, ¶ 10, 953 A.2d 378. NNEPRA argues that petitioners have not suffered any particularized injury to confer standing in this case.

A party that demonstrates a particularized injury is free to raise procedural issues that affect the validity of an administrative decision,

3

regardless of whether those specific issues are related to the alleged injury. *Matter of Lappie*, 377 A.2d 441, 443 (Me. 1977). Thus, petitioners in this case do not need to show that their property will be affected by stormwater runoff, which is the subject of the permit. The standing analysis is more general: the issue is "whether the asserted effect on the party's rights genuinely flows from the challenged agency action." *Nelson*, 2008 ME 91, ¶ 10, 953 A.2d 378.

"An abutter generally has standing to participate in and appeal from local administrative decision-making regarding zoning and land use issues." *Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 12, 974 A.2d 903. Even if petitioners were not abutters under MDEP's rules, their close proximity to the project site makes them abutters for the purposes of standing. *Sahl v. Town of York*, 2000 ME 180, ¶ 9, 760 A.2d 266. "When the appealing party is an abutter, the party need only allege 'a potential for particularized injury' to satisfy the standing requirement." *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 6, 746 A.2d 368.

Petitioners allege that they will be negatively impacted by increased noise, vibrations, and emissions if the railway facility is constructed. These allegations are sufficient to give petitioners standing. *See Sahl*, 2000 ME 180, ¶ 10, 760 A.2d 266 (finding standing where petitioners alleged motel expansion would obstruct their view of the ocean and create more traffic); *Matter of Lappie*, 377 A.2d at 443 (finding standing where petitioner alleged

4

that a waste disposal facility might "pose problems of rodent control, litter, and seepage into ground water").

### 3. Actual Notice

NNEPRA argues that, even if petitioners did not receive the notice required under the rules, they nevertheless had actual notice of the application but chose not to participate in the permitting process. At most, NNEPRA can only point to evidence in the record that shows one of petitioners, Daniel Sullivan, had knowledge that NNEPRA was applying for a Stormwater Permit. NNEPRA asks the court to infer that the other petitioners also had knowledge. The court declines to make such an inference. Because there is no evidence with respect to the other petitioners' knowledge, NNEPRA's actual notice argument lacks merit.

### 4. Abutters

The crux of this case requires the court to decide a simple question: are petitioners abutters under MDEP rules? If petitioners are abutters, they were entitled to notice of NNEPRA's Stormwater Permit application.

MDEP rules define abutter as follows:

**A. Abutter.** "Abutter" for the purposes of the notice provisions of this rule, means a person who owns property that is both (1) adjoining and (2) within 1 mile of the delineated project boundary, including owners of property directly across a public or private right of way.

5

06-096 C.M.R. ch. 2, § 1(A). The parties dispute the significance of the last clause: "including owner of property directly across a public or private right of way."

According to Respondents, the last clause of the definition of abutter does not create an exception to the adjoining requirement. Rather, the last clause is only intended to clarify that if two lots are adjoining, the fact that a right of way separates the *project site* from the adjoining property does not destroy abutter status. Under this interpretation, if a private or public right of way actually separates two lots, they are not adjoining and therefore not abutters.

Petitioners argue that the last clause creates an exception to the adjoining requirement. Under this interpretation, if a lot is separated from the project lot by a public or private right of way but would otherwise be adjoining, it is still an abutting lot under the rules.

A court must not construe a rule "in a way that renders portions of it meaningless." *Schaefer v. State Tax Assessor*, 2008 ME 148, ¶ 13, 956 A.2d 710. Respondents' interpretation would render the last clause meaningless. If the lots must be adjoining in every case, the additional language about a public or private right of way has no substantive meaning. One could simply ignore the last clause and come to the same result in every case. If the adjoining language refers to the project site boundary, as MDEP suggests, then the requirement that the lot be within one mile of the delineated project

6

boundary would be meaningless, because logically, a lot adjoining a project boundary must be within one mile of the boundary.

Petitioner's interpretation is consistent with the definition's underlying purpose. The two numbered requirements in the rule accomplish two different goals. First, the adjoining requirement narrows the field of abutters to those most directly impacted by the proposed project. Second, the one-mile limitation weeds out those neighboring property owners who are insulated from the project by a significant amount of the applicant's own land. Neither of these goals is advanced by also eliminating property owners "directly across a public or private right of way." This last clause is intended to protect those property owners whose property is close to and most impacted by a proposed project, but happens to be separated by a road or similar right of way. Although a court must generally defer to an agency's interpretation of its own rule, in this case, the rule plainly compels a contrary interpretation.

The issue remains, however, whether the State's land, subject to the rail freight easement, is a public or private right of way within the scope of the rule. MDEPs rules do not define "right of way." The ordinary meaning of right of way in this context is "[t]he strip of land subject to a nonowner's right to pass through." *Black's Law Dictionary* (9th ed. 2009). Because NNEPRA

7

and others have a right to use the railroad tracks on, and pass through, the State's strip of land, it falls within the definition of a right of way.[3]

MDEP argues, however, that although clearly rights of way, rail easements are neither public nor private. MDEP reads a level of sophistication into a definition that, on its face, is simply lacking. Nothing in the definition or the context of the rules suggests that the definition was drafted to exclude certain rights of way. The reference to "public or private" is intended to include all rights of way and cannot be read to exclude rail easements.

## Conclusion

Petitioners are abutters under MDEP rules, and as such, they were entitled to notice of NNEPRA's permit application. Because NNEPRA failed to give petitioners notice of its application, its permit is void.

The entry is:

> The Maine Department of Environmental Protection's decision granting NNEPRA a permit is VACATED.
>
> This matter is remanded for further proceedings consistent with this decision.

Dated: 7/2/14

Joyce A. Wheeler
Justice, Superior Court

---

[3] The words "public or private right of way" could plausibly refer to roads either owned in fee by a town, *see* 23 M.R.S. § 3023, or private ways, now commonly called public easements, *see* 23 M.R.S. § 3101(1)(A). Because nothing in MDEP's definition limits the rights of way to roads, however, the court declines to adopt this interpretation.

Petitioners- John Shumadine Esq
Respondent NNEPRA- Nathaniel M Rosenblatt ESq
Respondent State DEP- Lauren Parker AAG